**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | | |
|---|---|---|
| **VICTORIA MEANS, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 3:10-cv-003** |
| | : | |
| **vs.** | : | |
| | : | |
| | : | |
| **ST. JOSEPH COUNTY BOARD** | : | |
| **OF COMMISSIONERS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM IN SUPPORT OF
MOTION OF DEFENDANTS, BOARD OF COMMISSIONERS
OF ST. JOSEPH COUNTY AND ST. JOSEPH COUNTY SUPERIOR COURT,
TO DISMISS CASE FOR LACK OF STANDING
AND FOR FAILURE TO STATE A CLAIM**

**Introduction**

Plaintiffs are four individuals bringing claims for injunctive relief and damages under Title II of the Americans with Disabilities Act (and bringing similar claims under § 504 of the Rehabilitation Act of 1973), challenging the accessibility of public buildings and parking related to courthouses in St. Joseph County, Indiana.

This Motion is filed on behalf of the **County** entities, who maintain the St. Joseph Superior Court and the Mishawaka County Services Building (and the parking lot for the Mishawaka County Services Building). This motion does not affect any claims against the **City** entity, City of South Bend, who is in this case only as the claims relate to public parking on the streets outside the St. Joseph Superior Court in South Bend.

Plaintiffs are four disabled individuals who have been sued by their landlords in two civil actions in St. Joseph County, Indiana – two plaintiffs (Means and Matney) were sued in the Small Claims Division of the St. Joseph Superior Court, and two plaintiffs (Mr. and Mrs. Hummel) were sued in the St. Joseph Superior Court.

These plaintiffs lack standing to sue for injunctive relief for three reasons:

1.     None of the plaintiffs had cases pending in the **Mishawaka County Services Building** (where the St. Joseph Superior Court, Mishawaka Division, sits), and none parked in the parking lot in Mishawaka, so none of them have standing to seek injunctions with regard to the parking lot or the courtroom there;

2.     Similarly, the landlord case against Means and Matney was filed and conducted in the Small Claims Court (which is in a different building, about which Plaintiffs do not complain), and their case has never been in the **St. Joseph Superior Court building**, so they have no standing to seek injunctions with regard to the other building; and

3.     The landlord case against the Hummels has already been dismissed – in fact it was dismissed before this suit was filed – and therefore the Hummels (one of whom is now deceased) have no standing to seek injunctive relief with regard to the **St. Joseph Superior Court building** because they have no case pending there.

These plaintiffs have also failed to state a claim for damages because:

1.     Neither of the pair of plaintiffs has alleged compensatory damages resulted from any alleged inaccessibility, or that their cases were in any way affected.

2

**Statement of Facts**

Plaintiffs are four individuals with disabilities who allege the following with regard to

public buildings maintained by the Board of Commissioners of St. Joseph County:

a)  inaccessibility of **St. Joseph County Courthouse building**, 101 South Main Street, South Bend;

b)  inaccessibility of **Mishawaka County Services Building**, 219 Lincolnway West, Mishawaka; and

c)  failure to **provide public services** to individuals with disabilities as required by federal and state laws.[1]

Specifically, Plaintiffs allege the following with regard to each building:

| St. Joseph Superior Court building | Mishawaka County Services Building |
|---|---|
| Does not ensure access to public facilities for individuals using wheelchairs. The lack of accessibility includes: | Does not ensure access to public facilities for individuals using wheelchairs. The lack of accessibility includes: |
| • Restrooms for public<br>• Elevator is decrepit<br>• Water fountains | • Restrooms for public<br>• Elevator is decrepit<br>• Water fountains |
| • Restrooms for jurors<br>• Jury boxes<br>• Jury deliberation rooms | • Restrooms for jurors<br>• Jury boxes<br>• Jury deliberation rooms |
| • Witness stands<br>• Speaking podiums for addressing the court<br>• Counters used by clerks | • Witness stands<br>• Speaking podiums for addressing the court<br>• Counters used by clerks |
| • Seating arrangements for spectators | • Seating arrangements for spectators |
| • Tunnel into courthouse has steep angle | • Parking lot had dangerous slope. |

**Provide Public Services**

On information and belief, no services to assist litigants who are blind.[2]

---

[1] Amended Complaint, par. 1 and 23.

[2] Amended Complaint, par. 20(a), 20(b), and 22.

3

1.      **Plaintiffs Victoria Means and Tonia Matney**

Plaintiffs Victoria Means and Tonia Matney were sued in the Small Claims Division of the St. Joseph Superior Court, which is located at 112 South Lafayette Boulevard, South Bend, Indiana, in the case of *Dunedin Apartments v. Matney and Means*, Cause No. 71D01-0911-SC-11358.[3] Means and Matney allege in their Amended Complaint that they "seek transfer of the case to the plenary docket of the St. Joseph County Superior Court," which is located in the St. Joseph County Courthouse at 101 South Main Street, South Bend, Indiana, in a different building next door.[4] However, this transfer never occurred.

*Dunedin Apartments v. Matney and Means* was filed in the Small Claims Division on November 4, 2009 by attorney Bruce Huntington, representing Dunedin Apartments.[5] Attorney Kent Hull, representing Matney and Means in this case, appeared for Matney and Menas in the landlord case and filed an Answer and Counterclaim in the Small Claims Court on November 17, 2009.[6] Means and Matney moved to have the case transferred to the plenary docket of the St. Joseph Superior Court (as represented in the Complaint and Amended Complaint in this case), but that motion was denied on December 7, 2009, *before* the Complaint was filed in this case.

Trial never occurred (the docket indicates, on February 8, 2010, "Cause continued indefinitely"); the last item docketed is an Order from the Indiana Supreme Court, dated

---

[3] Amended Complaint, par. 6 The Defendants respectfully request the Court to take judicial notice of the address of the Small Claims Division of the St. Joseph Superior Court, which is located in a different building from the St. Joseph County Courthouse. Plaintiffs will not dispute this, as they have alleged that there is a Courthouse tunnel connecting the two buildings underground. Amended Complaint, par. 20(b)(9).

[4] *Id.*

[5] See copy of docket sheet from Cause No. 71D01-0911-SC-11158, attached as Exhibit A. The Seventh Circuit Court of Appeals has held that "the district court may also take judicial notice of matters of public record" without converting a motion to dismiss into a motion for summary judgment. *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003).

[6] *Id.*, p. 2.

February 4, 2010, denying Means's and Matney's motion to proceed in forma pauperis.[7] Nothing further has occurred in the case for over a year. Means and Matney have never had their case presented in the St. Joseph Superior Court building, and nothing about their case ever appeared in the Mishawaka County Services Building.

### 2. Plaintiffs Stephen and Margaret Hummel

Plaintiffs Stephen and Margaret Hummel were plaintiffs in the St. Joseph Superior Court in the case of *Stephen Hummel and Margaret R. Hummel v. Hollywood Mobile Home Park, Inc.*, Cause No. 71D04-0604-PL-135.[8] The Hummels allege in their Complaint and Amended Complaint that they are ( in the Amended Complaint they "were") in a case *pending* before the St. Joseph Superior Court,"[9] but this is not true. That case was tried before the court and dismissed on September 30, 2009, over three months before they filed suit in this case.[10] The Hummels filed a motion to correct error on October 30, 2009, which was denied on January 6, 2010, two days after they filed the Complaint in this case (so, technically, the case may still have been active, but their claims had already been tried and concluded).[11] Nothing further occurred in the case, and no appeal was filed. The Hummels have no case pending  in the St. Joseph Superior Court, and nothing about their case appeared in the Mishawaka County Services Building.

As a result, none of the plaintiffs has standing to challenge conditions within the Mishawaka Building (in which they never appeared) or in the Superior Court building.

---

[7] *Id.*, p. 4.

[8] Contrary to what is alleged at Amended Complaint, par. 8, the Hummels were the plaintiffs, not Defendants/Counterplaintiffs. The Hummels had been defendants in an earlier small claims action, but the case filed in the St. Joseph Superior court was instituted by the Hummels. See copy of Docket Sheet, attached as Exhibit B.

[9] Amended Complaint, par. 9.

[10] See copy of Findings of Fact and Conclusions of Law, attached as Exhibit C.

[11] See Exhibit B. In addition, Margaret Hummel has since died. Amended Complaint, par. 8.

**Argument and Law**

**Standard of Review**

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for want of standing, the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiffs favor.[12] A motion under Rule 12(b)(6) challenges the sufficiency of the complaint, and dismissal of an action under the rule is warranted only if no relief could be granted under any set of facts that could be proved consistent with the allegations.[13]

**A.      Plaintiffs lack standing to seek injunctive relief.**

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[14]

The party invoking federal jurisdiction bears the burden of establishing these elements.[15]

"Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff

---

[12] *White Eagle Coop. Assoc. v. Johanns*, 508 F. Supp.2d 664, 669 (N.D.Ind. 2007); *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Retired Chicago Police Assoc. v. City of Chicago*, 76 F.3d 856, 862 (7th Cir.1996).

[13] *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir.2000).

[14] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 364 (1992) (internal citations omitted). See also,

[15] *Id.*

bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.[16]

In the first element above, that the plaintiff must have suffered an injury in fact that is concrete and particularized, the *Lujan* court further clarified that "By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."[17] This requirement will first of all eliminate from this case any claims with regard to Mishawaka County Services Building in Mishawaka, Indiana, because none of the plaintiffs has or had a case pending in that building (or in that town), and there are no allegations whatsoever in the Complaint or Amended Complaint that any of the plaintiffs ever went there or parked in the parking lot there. With whatever injury any plaintiff has alleged to have suffered, none of it occurred in Mishawaka.

This also eliminates any claims of Means and Matney, because they never appeared in the St. Joseph Superior Court building, and they have not alleged that they suffered any injury or had their small claims case affected in any way. Means and Matney have failed to plead sufficient factual allegations to meet the Article III standing requirements for either an "injury in fact" or "causation."

As for Stephen Hummel's claim, Article III of the Constitution limits the judicial power of the federal courts to "Cases" and "Controversies," thereby restricting it to "the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law."[18] Further, the party invoking federal

---

[16] *Id.*

[17] *Id.*, at n. 1.

[18] *Summers v. Earth Island Institute*, __ U.S. __, 129 S. Ct. 1142, 1148, 173 L.Ed.2d 1 (2009).

jurisdiction bears the burden of establishing the requisite elements of standing for each claim and for each form of relief sought.[19]

To seek injunctive relief, a plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.[20] This requirement assures that "there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party."[21] As the Seventh Circuit has noted:

> The exercise of federal judicial power is legitimate only in live "cases" or "controversies," and  one of the controlling elements in the definition of a case or controversy under Article III is standing. The Supreme Court has described standing as perhaps the most important Article III doctrine. In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. To qualify as a case fit for federal-court adjudication, there must be an actual controversy in existence at all stages of review, not merely at the time the complaint is filed. If a dispute is not a proper case or controversy, the courts have no business deciding it.[22]

"[E]ven for sympathetic plaintiffs like ADA plaintiffs, the requirements of Article III must be met, and factual allegations put forth by serial ADA plaintiffs that bear on the propriety of standing must actually prove to be correct for Article III standing to properly lie."[23]

---

[19] *Id.,*129 S.Ct. at 1149.

[20] *Id.* (citing *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)).

[21] *Id.* (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)).

[22] *Bond v. Utreras*, 585 F.3d 1061, 1069 (7th Cir.2009) (internal citations omitted).

[23] *Access 4 All, Inc. v. Chi. Grande, Inc.*, 2007 U.S. Dist. LEXIS 35304 (N.D. Ill. May 10, 2007).

There are three elements that comprise "the irreducible constitutional minimum of standing."[24]

1.  The plaintiff must have suffered or be under threat of suffering an "injury in fact" – an invasion of a legally protected interest which is:

    a.  concrete and particularized, and
    b.  (b) actual or imminent, not conjectural or hypothetical.

2.  The injury must be "fairly traceable" to the challenged action of the defendant; in other words, there must be "causation."

3.  A favorable judicial decision must be likely to prevent or redress the injury.[25]

The equitable remedy of injunction is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.[26] An abstract injury is not enough to satisfy the threshold requirement of alleging an actual case or controversy. Each plaintiff must show that he or she has sustained or is in danger of sustaining some direct injury as a result of the challenged conduct and that the threat of injury is both real and immediate, not conjectural or hypothetical.[27]

The case of *Schotz v. Cates*[28] is directly on point. Plaintiffs Shotz and Tacl were disabled persons residing in Florida – Shotz used a wheelchair and service dog to get around, while Tacl suffered from a disability that required the use of a cane and wheelchair. In July 1999, Shotz attempted to enter the Levy County Courthouse with his service dog in order to attend a trial in Judge Frederick Smith's courtroom. After sheriff's deputies told Shotz that dogs were not permitted to enter the building, Shotz informed them of his ADA right to use a service dog inside

---

[24] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 2136, 119 L.Ed. 2d 351 (1992).

[25] *Id.*

[26] *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983).

[27] *Id.*; *Hansen v. United States Steel Corp.*, 2008 U.S. Dist. LEXIS 10152 (N.D. Ind. Feb. 7, 2008).

[28] *Scotz v. Cates*, 263 F.3d 1077 (11th Cir. 2001).

public buildings. After some delay, Judge Smith questioned Shotz  about his need for his dog and eventually granted permission for the dog to remain in the courtroom.[29]

Tacl alleged that in late July 1999, he was tried before Judge Smith on unspecified criminal charges. Tacl requested that a hospital bed be provided him during the trial on account of his disability. Judge Smith declined to provide a hospital bed, but allowed Tacl to use one that he obtained at his own expense.[30]

Shotz and Tacl alleged that Levy County "violated the Americans with Disabilities Act by failing to remove barriers to access by persons with physical disabilities at the Levy County Courthouse where such barrier removal is necessary to render the courthouse readily accessible to and usable by individuals with disabilities." More specifically, the complaint stated that Shotz and Tacl "were confronted by the many architectural barriers contained within the Courthouse, including a) curb ramps with slopes more than two times the maximum allowable slope and b) bathroom stalls with insufficient clear floor space." They sought injunctive relief compelling the County to comply with the ADA.[31]

The trial court dismissed the plaintiffs' claims for lack of standing to assert claims for injunctive relief, and the court of appeals affirmed:

> In addition, "because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges … a real and immediate-as opposed to a merely conjectural or hypothetical-threat of future injury." *Wooden v. Board of Regents of University System of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2001). On defendants' motion to dismiss we must evaluate standing based on the facts alleged in the complaint, and we may not "speculate concerning the existence of standing or 'piece

---

[29] *Id.*, at 1078-79.

[30] *Id.*, at 1079.

[31] *Id.*

together support for the plaintiff.'" *Cone Corp. v. Florida Dept. of Transp.*, 921 F.2d 1190, 1210 (11th Cir. 1991) (citation omitted).

In ADA cases, courts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant. *See Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 830 (D.Md. 1998); *Hoepfl v. Barlow*, 906 F. Supp. 317 (E.D.Va. 1995); *Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329 (N.D.Cal. 1994). In *Proctor*, the plaintiff admitted that it was purely speculative whether he would have to visit the hospital, given the fact that his only other visit was because of a motorcycle accident. 32 F. Supp. 2d at 833. In *Hoepfl*, the court stated "because [the plaintiff] now resides in a different state, it is highly unlikely that she will ever again be in a position where any discrimination by [the defendant] against disabled individuals will affect her personally." 906 F. Supp. at 320. In *Aikins*, the plaintiff owned a mobile home at which she stayed only several days a year. 843 F. Supp. at 1333. During one such visit, she alleged that she was discriminated against by a nearby hospital. *Id.* The court concluded that the limited amount of time she spent in the area, coupled with the fact that she visited the hospital only because of her husband's illness, failed to suggest a "real or immediate threat" of future discrimination by the hospital. *Id.* at 1333-34. *See also Tyler v. The Kansas Lottery*, 14 F. Supp. 2d 1220 (D.Kan. 1998) (plaintiff who had since moved to Wisconsin was unlikely to be harmed by discrimination at lottery outlets in Kansas).

Here, the plaintiffs do not allege a real and immediate threat of future discrimination. The complaint contains only past incidents of discrimination. "Injury in the past, however, does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment." *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1348 (11th Cir. 1999). More importantly, since their July 1999 visit to the Levy County Courthouse, the plaintiffs have not attempted to return, nor have they alleged that they intend to do so in the future. Absent such an allegation, the likelihood of future discrimination remains "conjectural, hypothetical, or contingent," and not "real and immediate." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985). Accordingly, the plaintiffs do not have Article III standing.[32]

---

[32] *Shotz v. Cates*, 256 F.3d 1077, 1081-1082 (11th Cir. 2001).

11

For the same reasons, all four plaintiffs in this case do not have standing to challenge facilities in buildings in which none of them appeared or in which their access to the court (of which they claim no deprivation) has already concluded.

**B.      Plaintiffs have failed to state a claim for damages.**

The Amended Complaint does not contain any allegations that any of the four plaintiffs suffered any compensatory damages, or that the outcome of their two cases was in any affected at all. Neither case was a jury trial, so the conditions with regard to the jury boxes and jury rooms is irrelevant. There are no allegations that jurors, witnesses, or counsel were not able to participate. There are no allegations that either set of plaintiff lost their landlord actions because of any of the alleged defects in the premises.

Proof of intentional discrimination is necessary before a plaintiff may recover compensatory damages under Title II of the ADA.[33] Plaintiffs have not alleged any basis for compensatory damages, and they have not identified any compensatory damages suffered. Their Amended Complaint therefore fails to state a cause of action for compensatory damages as a matter of law.

**Conclusion**

Defendants, the St. Joseph County Board of Commissioners and St. Joseph County Superior Court, respectfully request that the Amended Complaint against them be dismissed.

---

[33] See 42 U.S.C. § 12133 (Title II of the ADA borrows remedies from the Rehabilitation Act); 29 U.S.C. § 794(a)(2) (Rehabilitation Act borrows remedies from Title VI of the Civil Rights Act of 1964); *Alexander v. Sandoval*, 532 U.S. 275, 280-81, 149 L. Ed. 2d 517, 121 S. Ct. 1511 (2001) (stating that private individuals may not recover compensatory damages under Title VI except for intentional discrimination).

Respectfully submitted,

s/ James F. Groves

s/ David E. Ballard

Lee, Groves & Zalas
205 West Jefferson Blvd., Suite 502
South Bend, IN  46614
(574) 232-5923
Fax: 232-5942
Attorneys for Defendants Board of Commissioners
of St. Joseph County and St. Joseph Superior Court

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2011, I electronically filed the foregoing with the clerk of the court using CM/ECF, which sent a Notice of Electronic Filing to all counsel of record.

s/ David E. Ballard