| STATE OF INDIANA ) | IN THE ST. JOSEPH SUPERIOR COURT |
|---|---|
| ) SS: | |
| ST. JOSEPH COUNTY ) | CAUSE NO. 71D04-0604-PL-00135 |

STEPHEN HUMMEL and )
MARGARET R. HUMMEL )
    Plaintiffs, )
)
vs. )
)
HOLLYWOOD MOBILE HOME )
PARK, INC. )
    Defendant. )

- FILED -

SEP 3 0 2009

Clerk
St. Joseph Superior Court

## INTRODUCTION

A bench trial in this case was conducted on August 13, 2009. The parties had waived their right for a jury trial.

At trial, both parties presented evidence through testimony of the parties, witnesses and exhibits. The issues addressed damages to both parties, validity of Plaintiffs' claims, and the legality of the small claims court action. Following the trial, each side submitted proposed findings of fact and conclusions of law, both submitted by August 24, 2009.

After considering all pleadings, evidence presented at trial and proposed findings of fact and conclusions of law, this court now makes its findings of fact and conclusions of law.

## FINDINGS OF FACT

In 2005 and 2006, Hollywood Mobile Home Park, Inc. ("Hollywood") owned and operated a trailer park in St. Joseph County. Hollywood is divided into numbered lots for rental to individuals. Hollywood is located at 23768 U.S. 20 West, South Bend, Indiana. Thomas Herrman is president of the corporation that owns Hollywood.

In said time period, Stephen Hummel and Margaret R. Hummel ("Hummels") owned a trailer and rented a lot from Hollywood month to month.

No formal written lease existed between the parties, although the Hummels acknowledged

receipt of written rules and regulations. Hollywood, at the request of the Hummels, leased to them Lot Numbered Seventy-Three (#73) for a monthly sum of One Hundred Ninety Dollars ($190), which was increased to Two Hundred Twenty Dollars ($220) in the Fall of 2005. The Hummels placed a 1974 mobile home/trailer on the lot, which they had purchased in 2000 for the sum of Two Thousand Dollars ($2,000.00).

The Hummels' trailer adjoined another trailer owned by tenants/neighbors, Holly Cook and Jason Cook and their two minor children ("Cooks").

Prior to early 2006, no incidents or conflicts or disputes had ever occurred or arisen between the Cooks and the Hummels.

Prior to early 2006, there were never any complaints, reports, notices, or information provided to Hollywood and/or the police about the Hummels or the Cooks and there was no history of any misconduct or problems between the Hummels and the Cooks.

On an unspecified date in early 2006, the Hummels came outside of their trailer in order to clean up around their property.

At that time and place, the Cooks had visitors, including Mrs. Cook's brother and her parents, all of whom were also outside of their respective trailer property.

At that time and place, an argument or discussion occurred between some of the persons in the Cooks' party and the Hummels about whether or not Mrs. Cook's brother had parked his vehicle so as to encroach on a portion of the Hummels' rental lot.

That discussion lasted 5-10 minutes, after which the Hummels retired into their trailer. The Hummels maintain that some of the Cooks' party came slightly onto their property. The Cooks, through testimony of Holly Cook, deny that any of the Cooks' party entered onto the Hummels' lot.

-3-

The Hummels were never touched by anyone in the Cooks' party and none of the Cooks' party ever threatened to touch the Hummels. None of the Hummels' property was damaged and no one threatened to damage the Hummels' property.

On said date, Robin A. Phillips was the on-site employee manager of Hollywood, also residing at the mobile home park.

During the aforesaid discussions between the Hummels and the Cooks' party, Mrs. Hummel called Robin, requesting her to come over in order to explain to the Hummels about their property line and parking rights.

None of the members of the Cooks' party were related to Robin A. Phillips and none of the Cooks' party were related in any way to any owner or employee of Hollywood.

In response to Mrs. Hummel's call, Robin A. Phillips walked over to the Hummels' trailer and arrived within three minutes of being called.

Upon the arrival of Robin A. Phillips, she found the parties completely separated and standing either in the public street or on their own respective properties, with no arguments or discussions occurring between any parties. Robin A. Phillips was not informed by anyone of any argument or discussions.

The Hummels never made any complaint about any situation, any demand for action or help on the part of Robin A. Phillips or on the part of Hollywood, at any time, nor did the Hummels ever ask for any police intervention or investigation.

Upon the arrival of Robin A. Phillips, the only request that the Hummels made of Robin was for clarification of their property line and then the rest of the conversation revolved around the Hummels' rent situation.

-4-

Hollywood did not encourage, authorize, instigate, condone or participate in the argument or incident between the Hummels and the Cooks' party.

On several occasions, the park was made uninhabitable by sewage overflow and contaminated water. Although the problems were subsequently corrected, there were periods that conditions were untenable.

That by the testimony of Hummels, they knew, as of February 2006, that they were behind in their rental obligation and were going to be requested by Court action to remove their mobile home/trailer from Lot Numbered Seventy-Three (#73).

In February of 2006, Hollywood filed, in small claims court, an application for immediate possession. The complaint requested damages of $1,450.00 for unpaid rent. Because the amount was under $1,500.00, the plaintiff, a corporation, was not required to have an attorney representing it in court pursuant to S.C. Rule 8(c)(3). A designated employee, Robin Phillips, represented Hollywood at the hearing. An affidavit of Designated Employee to Appear in Court, signed by Robin Phillips, was on file.

In small claims, the Notice of claim and affidavit for Immediate Possession were signed by Jennifer Williamson.

Jennifer Williamson is the daughter of Thomas Herrman, the president of Hollywood Mobile Home Park, Inc.

Jennifer Williamson was an employee of Herrman & Goetz and was not an employee of Hollywood Mobile Home Park, Inc.

Jennifer Williamson was not an authorized representative of the plaintiff corporation pursuant to S.C. Rule 8 (c)(3).

When Immediate Possession was granted and the Hummels were thereafter evicted, no objection to the legality of the proceeding was made.

That the Hummels, after being ordered to vacate Lot Numbered Seventy-Three (#73) in April of 2006, pursuant to an eviction proceeding in small claims court, took money they received from Social Security Disability Claim retroactive benefits and abandoned their mobile home/trailer and took up residence on Studebaker Street in South Bend, Indiana, failing to either pay their back rent owed or remove their mobile home from Lot Numbered Seventy-Three (#73).

As of February of 2006, the rent due was in excess of One Thousand Four Hundred Fifty Dollars ($1,450.00).

On April 5, 2006, the Hummels filed, in plenary court, a complaint for damages and injunctive and declaratory relief against Hollywood. Hummels then moved for a consolidation of the small claims immediate possession action in small claims court (which had yet addressed the damages issue relating to the eviction) with the plenary action. The motion was granted.

The assertion that neither an attorney nor an authorized representative signed the complaint of Hollywood Mobile Home Park, Inc. in small claims was brought up for the first time at the trial to support the contention that the complaint was a "nullity".

The bench trial was held August 13, 2009 on the Hummels' complaint and the parties' damages. Prior to the bench trial, the matter was not diligently pursued by the plaintiffs. On December 29, 2006 a Trial 41 (E) Rule to Show Cause had been issued. Motions to Dismiss made by defendants on September 24, 2008 and January 26, 2009 were based on plaintiffs' failure to provide answers to discovery. Those motions were denied, however plaintiffs were admonished to provide discovery responses or their claims would be dismissed.

## CONCLUSIONS OF LAW

1.  Although Hollywood's "Complaint for Immediate Possession" and the "Affidavit for Immediate Possession" filed in small claims court were signed by neither an attorney nor an authorized representative of the plaintiff, the defects were cured by an authorized representative of plaintiff appearing at the court hearing and thereafter being represented by counsel. This conclusion is supported by Watson v. Auto Advisors, Inc., 822 NE2d 1017 (Ind. Ct. App. 2005); Trook v. Lafayette Bank & Trust Co., 581 NE2d 941, 945 (Ind. Ct. App. 1991); Christian Phone Book v. Indianapolis Jewish Community Relations Council, 576 NE2d 1276 (Ind. Ct. App. 1991). Although previously, in Simmons v. Carter, 576 NE2d 1278, (Ind. Ct. App. 1991), the court took the position on similar facts that a judgment would be void, the court in Watson, supra, took the position that previously the court in Simmons wrongly used "void" instead of "voidable". Additionally, Simmons' decision involved a judgment. Here, the proceeding was not a judgment but an Application for Immediate Possession, requesting a prejudgment determination. This court finds that the small claims determination should not be nullified and the eviction was proper.

2.  The Complaint for Immediate Possession in small claims court requested damages of $1,450.00. Thereafter, throughout the proceedings, no amendment to the original complaint was requested. Thus, any damages awarded to Hollywood will be limited to $1,450.00 plus court costs. At trial, Hummels objected to evidence introduced by Hollywood to support much larger damage contentions. No amendment to the complaint together with Hummels' objection to the evidence as outside the scope of the pleadings avoids a conclusion that the issue was tried by consent. Ayr-Way v. Chitwood, 300 NE2d 335 (Ind. 1973). Trial Rule 15 (B) supports that amendments to the complaint should be granted if sought. Again, Hollywood did not request the amendment.

-7-

3. The evidence did not support Hummels' claim that Hollywood Park was generally uninhabitable. However, testimony by both sides regarding sewer overflows and contaminated drinking water did make the park uninhabitable for short times before the problems were corrected by Hollywood. Still, the problems were serious enough to cause damages to the Hummels.

4. Whether or not the neighbors assaulted the Hummels by virtue of their "body language", such behavior was not the fault of Hollywood, but could only be the fault of non-parties. Other than a possible complaint regarding the Cooks' behavior on one occasion, Hummels did not complain of any other incidents to Hollywood management. Hollywood did not breach a duty to Hummels with regard to neighbors' acts.

5. This court finds in conclusion:

   a. The Hummels did not pay rent in the amount of $1,450.00 and Hollywood is entitled to that sum plus court costs.

   b. Hollywood was responsible for short episodes wherein the park was uninhabitable due to sewage pooling above ground and water contaminated with excess chlorine. The damage caused by Hummels' distress and exposure to dangerous elements is entitled to a credit to the owed rent in the amount of $1,450.00 plus costs, thereby cancelling out the verdicts.

   c. The Hummels are ordered to remove the abandoned trailer from the Hollywood Park by October 31, 2009 or, in the alternative, to provide the requested authority by the park within fifteen days after the date of this order, to remove, sell, or destroy the trailer.

SO ORDERED.

-8-

JUDGMENT.

Dated this 30th day of September, 2009.

                                              Margot F. Reagan, Judge
                                              St. Joseph Superior Court

cc:    Kent Hull
        Kenneth L. Sheetz
        Kenneth M. Wilk