UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| VICTORIA MEANS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | No. 3:10-CV-00003 JD |
| ST. JOSEPH COUNTY BOARD ) | |
| OF COMMISSIONERS, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Now before the Court is the Motion to Dismiss the Case for Lack of Standing and for Failure to State a Claim [DE 9] filed by Defendants Board of Commissioners of St. Joseph County and St. Joseph Superior Court, on January 28, 2011. For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.

**I. Background**

Plaintiffs Victoria Means, Tonia Matney, and Stephen Hummel filed the present action challenging the accessibility of the state courthouses and courthouse parking in St. Joseph County, Indiana, under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, and asserting violations of the Federal and Indiana State Constitutions.[1] [DE 27 ¶ 27] They have sued the St. Joseph County Board of Commissioners, the St. Joseph Superior Court, and the City of South Bend, seeking declaratory relief and injunctive relief requiring modification of the courthouse buildings and parking to prevent future violations, as well as

---

[1]Stephen Hummel's late wife, Margaret, was also a plaintiff in the original complaint, but is no longer a named party in this case. [DE 1, DE 27]

compensation for past injuries caused by the alleged violations. [*Id.* at ¶ 32]

The complaint alleges that each of the plaintiffs resides in St. Joseph County and is disabled within the meaning of the ADA, 42 U.S.C. § 12100. [*Id.* at ¶¶ 4, 5, 7] In late 2009, Plaintiffs Means and Matney, who are sisters, were sued in the Small Claims Division of the St. Joseph Superior Court, *Dunedin Apts. v. Matney & Means*, Cause No. 71DO1-0911-SC-11358. [*Id.* at ¶ 6; DE 39-1 at 2[2]] They sought to have their case transferred to the plenary docket of the St. Joseph Superior Court, but their Motion to Transfer was denied. [DE 39-1 at 3] In February 2010, a month after the original complaint in this case, the plaintiffs in the small claims court case requested and received an indefinite continuance. [*Id.* at 4] The case remains pending and, as far as this Court is aware, there as been no activity since February 2010. [*Id.*]

Plaintiff Hummel and his late wife sued Hollywood Mobile Home Park, Inc., in the plenary court of the St. Joseph Superior Court in 2006, seeking damages and injunctive and declaratory relief, *Hummel v. Hollywood Mobile Home Park*, Civil Plenary Case No. 71D04-0604-PL-00135.[3] [DE 39-2 at 1; DE 39-3 at 5] In September 2009, the Superior Court entered its Findings of Fact and Conclusion of Law resolving the case against the Hummels. In January 2010, just days after the original complaint was filed in this case, the Superior Court denied the Hummels' Motion to Correct Error. [DE 39-2 at 4] The Hummels did not appeal the decision.

---

[2]Because the County has alleged that Plaintiffs lack standing, the Court may look behind the complaint to determine whether it has jurisdiction over these claims. *Palay v. United States*, 349 F.3d 418, 424–25 (7th Cir. 2003). The Court considers the two docket sheets attached to the Memorandum in Support of the Motion to Dismiss—which are uncontested by Plaintiffs—solely for the limited purpose of determining whether any Plaintiffs have standing.

[3]The amended complaint alleges, in paragraph 9, that the Hummels were defendants and counterplaintiffs in the abovementioned case, but this allegation is contradicted by the docket sheet and the judgment from that case. The Court notes, however, that the Hummels were sued for unpaid rent by Hollywood Mobile Home Park in small claims court in an earlier case which gave rise to, and was then consolidated into, the separate suit in plenary court. [DE 39-3 at 4–5]

[*Id.*]

Plaintiffs allege in the complaint that they "have been, or are threatened to be, denied or impeded in their access to, the services of, the St. Joseph Superior Court by reason of their disabilities." [DE 27 ¶ 20] They allege that various parts of the St. Joseph County Courthouse at 101 South Main Street in South Bend, Indiana, and the Mishawaka County Services Building at 219 Lincolnway West in Mishawaka, Indiana, "do not comply with federal rules, guidelines, and professional design standards to ensure access to public facilities for individuals using wheelchairs." [*Id.*] Specifically, Plaintiffs allege deficiencies in the restrooms, the elevator, the witness stands, the jury boxes and deliberation rooms, the speaking podiums, the seating arrangements, the "steep angles of ingress and egress in the Courthouse tunnel and the south public entrance to the Mishawaka County Services Building," the Clerks' counters, and the water fountains. [*Id.*] They also allege insufficient accessible parking near both the County Courthouse in South Bend (for which the City is responsible) and the County Services Building (for which the County is responsible). [*Id.* at ¶¶ 21–22] Further, Plaintiffs allege that the Board of Commissioners and St. Joseph Superior Court have no services to assist blind or visually disabled litigants. [*Id.* at ¶ 23] Finally, they allege that Defendants have been informed of many of the various deficiencies, but have not attempted to remedy them. [*Id.* at ¶ 24] Plaintiffs' only alleged reason for accessing the courthouse buildings in the past or in the future is to assert their rights in the lawsuits pending against them at the time the complaint was filed. [*Id.* at ¶ 25]

The County Defendants filed this Motion to Dismiss solely on their own behalf, not intending to affect any claims asserted against the City of South Bend, which has its own Motion for Summary Judgment pending and ripe for adjudication. [DE 36] The Court will issue a

separate ruling on that Motion.

## II. Standards of Review

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of claims over which the Court lacks subject-matter jurisdiction. In analyzing a motion to dismiss, the Court must accept as true all well-pled factual allegations and must draw all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Retired Chicago Police Assoc. v. City of Chi.*, 76 F.3d 856, 862 (7th Cir. 1996). However, the plaintiff bears the burden of establishing that subject-matter jurisdiction is proper. *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003). The Court may look beyond the pleadings and consider any evidence submitted to determine whether jurisdiction exists. *Long*, 182 F.3d at 554.

Fed. R. Civ. P. 12(b)(6) authorizes dismissal if the complaint fails to sets forth a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When analyzing a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). However, the Court need not take unsupported legal conclusions contained in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940 (2009).

## III. Analysis

The County Defendants move to dismiss all claims against them under both Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and Rule 12(b)(6), for failure to state a claim upon which relief can be granted. The Court will begin its analysis with jurisdiction because without jurisdiction it may not reach the merits of the complaint.

A.     **Plaintiffs' Standing to Sue the County**

The County Defendants argue that the Court lacks jurisdiction to consider the claims against it because Plaintiffs lack standing. The doctrine of standing polices the outer limits of federal judicial power under Article III of the Constitution: unless a claim involves an actual "Case" or "Controversy," federal courts have no subject-matter jurisdiction over it. *Ezell v. City of Chicago*, No. 10-3525, 2011 WL 2623511, at *7 (7th Cir., July 6, 2011); *Lee v. City of Chicago*, 330 F.3d 456, 469 (7th Cir. 2003). "Standing exists when the plaintiff suffers an actual or impending injury, no matter how small; the injury is caused by the defendant's acts; and a judicial decision in the plaintiff's favor would redress the injury." *Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir. 2010) (citing *Summers v. Easrth Island Inst.*, 555 U.S. 488, 129 S.Ct. 1142, 1149 (2009)).

Because the plaintiffs seek both injunctive and compensatory relief, the Court will separately consider its jurisdiction over each, keeping in mind that it is Plaintiffs' burden to show standing for each type of relief sought. *Summers*, 129 S.Ct. at 1149.

1. *None of the Plaintiffs Have Standing to Sue for Declaratory or Injunctive Relief.*

At its core, Plaintiffs' complaint is an attempt to cure alleged violations of the ADA going forward, and to this end they seek declaratory and injunctive relief, along with court supervision of the implementation of any injunction. [DE 27 ¶ 32] But "[t]o seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical." *Summers*, 129 S.Ct. at 1149. It is not enough that a plaintiff allege that he has suffered past wrong at the hands of the defendant: "[p]ast exposure to illegal conduct does not in itself show a

5

present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present, adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 104 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)). Thus, whether any of the plaintiffs have standing to seek injunctive and declaratory relief turns on whether they have alleged an ongoing or imminent injury to their rights under the ADA, Rehabilitation Act, and the Federal and State Constitutions.

The complaint here focuses on Plaintiffs' encounter with the St. Joseph Superior Court as litigants in landlord-tenant disputes. They allege ADA violations in two buildings, the St. Joseph County Courthouse and the Mishawaka Services Building. But none of them plausibly allege that they have any pending cases in those buildings nor that they expect to be involved in any litigation there in the immediate future. Means and Matney do have a pending claim, but it is in a separate building, and they allege no ADA violations in that building. Moreover, the complaint does not indicate that any of the plaintiffs have any concrete plans to visit either building for any reason. Without such plans, they face no actual, imminent threat of injury from the alleged ADA violations.

In their response to the Motion to Dismiss, Plaintiffs claim that they suffer a real threat of future injury because they are "not only litigants, but citizens and residents of St. Joseph County." [DE 42, 5] From this bare fact of citizenship, Plaintiffs argue that we can infer a concrete threat of future harm. They identify several reasons that they may end up at one of the two buildings some day: for litigation as spectators, jurors, witnesses, or litigants, or for other non-judicial business, as concerned taxpayers, or "devotees of the historic architecture." [*Id.*] But however compelling these reasons may be, the fatal flaw in Plaintiffs' argument is the word "may": they have not alleged that they actually intend to engage in any of the activities they list.

Of course, many people end up in court without really intending it far in advance. Plaintiffs could hardly allege that they "intend" to be subpoenaed as witnesses, summoned as jurors, or sued as defendants. But the fact that Plaintiffs do not have complete control over when, and in what role, they visit the courthouse buildings does not render the possibility of their injury any less hypothetical or speculative. In this regard, the Court is guided by a closely analogous decision from the Eleventh Circuit in a case involving alleged ADA violations at a courthouse, as well as several older standing decisions from our own Seventh Circuit Court of Appeals. In *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001), the Eleventh Circuit considered whether a district court had properly dismissed, for want of standing, a complaint seeking injunctive relief by two disabled individuals who had encountered barriers in Florida's Levy County Courthouse that allegedly violated the ADA. After reasoning that the plaintiffs had stated a claim under Title II of the ADA, notwithstanding the fact that the plaintiffs had not actually been prevented from accessing the court, the Court of Appeals noted that "because injunctions regulated future conduct, a party has standing to seek injunctive relief only if the party alleges . . . a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Id.* at 1081 (citations omitted). Because the plaintiffs had not attempted to return to the courthouse since the initial incident, and had not alleged that they intended to do so in the future, the court held that the plaintiffs lacked Article III standing. *Id.* at 1082.

The Court is not aware of any Seventh Circuit cases addressing standing to bring ADA claims based on future access to a courthouse, but it is clear that similar standing principles apply in our own circuit as in the Eleventh Circuit. In *Campbell v. Miller*, 373 F.3d 834 (7th Cir. 2004), the plaintiff, who alleged that a body-cavity search by the Indianapolis police violated his

rights under the Fourth Amendment, unsuccessfully sought a preliminary injunction against this practice. The district court denied the preliminary injunction and the Court of Appeals affirmed. It reasoned that not only did the plaintiff have an adequate remedy at law, but also that he was the improper party to pursue injunctive relief: "unless the same events are likely to happen again to him there is no controversy between him and the City about the City's future handling of other arrests." *Id.* at 836 *(citing Weinstein v. Bradford*, 423 U.S. 147 (1975)). Similarly, in *Robinson v. City of Chicago*, 868 F.2d 959 (7th Cir. 1989), the Court of Appeals held that plaintiffs did not have Article III standing to obtain an injunction against certain policies that resulted in misdemeanor arrestees being held for excessive periods of time because they could not "show a real or immediate threat that they will be wronged again, while any previous injury can be and was compensated for by damages." *Id.* at 967.

In this case, the plaintiffs have not alleged that they intend to visit the courthouse buildings at issue in any capacity. And the Court has no reason to believe that there is any more than a speculative prospect of an involuntary summons, subpoena, or suit bringing these plaintiffs into those courthouse buildings. Plaintiffs do not allege that they have ever been summoned as jurors or subpoenaed as witnesses. While Plaintiff Hummel has once been a litigant in the St. Joseph County Courthouse, that case is over and nothing in the complaint or the record suggests that Hummel is a frequent litigant especially likely to return to court. Thus, absent any present business in the courthouse buildings or concrete plans for future business, Plaintiffs lack the imminent threat of future harm necessary to create the injury-in-fact to support Article III standing for prospective relief. *See Lyons*, 461 U.S. at 104.

Plaintiffs also invoke the "futile gestures" doctrine from Title III of the ADA (public

accommodations). As explained by the Ninth Circuit in *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002), a plaintiff need not himself experience barriers to public accommodations to establish standing so long a he "has actually become aware of the discriminatory conditions . . . and is thereby deterred from visiting or patronizing that accommodation." But this doctrine cannot save Plaintiffs' complaint, which alleges neither that Plaintiffs have been deterred from visiting the courthouse buildings in the past, nor that they would visit in the future but for the ADA violations.

      2. *Only Plaintiff Hummel has Standing to Sue for Alleged Past Injury*

In addition to injunctive relief, Plaintiffs are seeking compensatory damages for past harm caused by the alleged ADA violations at the court buildings. Plaintiffs Means and Matney clearly do not have Article III standing to pursue such claims: the complaint alleges ADA violations in two county buildings—the St. Joseph County Courthouse and the Mishawaka Services Building—but does not allege that Means and Matney have ever set foot in either of those buildings, much less suffered an injury caused by the alleged violations. As such, they have no past injury that the Court might effectively redress, and they lack standing to pursue any claims for compensatory damages. *Ezell*, 2011 WL 2623511, at *7.

Plaintiff Hummel has not alleged that he has ever been in the Mishawaka Services Building, so he has not adequately asserted a claim that he has been injured by the alleged violations in that building. But his claim for damages arising from alleged violations in the St. Joseph Superior Court is a different story. The docket sheet attached to the County Defendants's Motion to Dismiss reveal that not only did Hummel and his late wife try a case in the St. Joseph County Courthouse but also that he personally appeared in court on at least one occasion. [DE

39-2 at 2] The complaint alleges that he experienced at least some of the ADA violations listed therein, and this is enough to satisfy the minimal requirements of Article III standing. *See Bauer*, 620 F.3d at 708; *Long*, 182 F.3d at 554.

## B.   Motion to Dismiss for Failure to State a Claim

The County Defendants argue that even if any of Plaintiffs have standing to sue for past harm, the complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted because they have not alleged any compensatory damages. Having concluded that only Hummel has standing to pursue claims under the complaint as it stands, the Court considers this issue solely with respect to his claims for damages based on past injury.

A plaintiff may state a claim under Title II of the ADA and Section 504 of the Rehabilitation Act by alleging that a public entity intentionally failed to accommodate that plaintiff's disability if the requested accommodation was both reasonable and necessary to avoid discrimination on the basis of disability. *Wisconsin Comm. Serv. Inc. v. City of Milwaukee*, 465 F.3d 737, 751 (7th Cir. 2006) (en banc). And this is precisely the central thrust of Hummel's claim: the complaint alleges that "plaintiffs have been, or are threatened to be, denied or impeded in their access to, the services of, the St. Joseph Superior Court by reason on their disabilities" due to various features of the buildings that allegedly "do not comply with federal rules, guidelines, and professional design standards to ensure access to public facilities for individuals using wheelchairs." [DE 27 ¶ 5] Further, the complaint states that the Defendants, "despite having been informed of many of the problems listed above, have taken no action to remedy those problems." [DE 27 ¶ 24] These allegations are sufficient, if minimally, to state a

cause of action for failure to make reasonable accommodations. *See id.; Long*, 182 F.3d at 554.

The County Defendants contend that Hummel has not stated a viable claim because he does not allege "compensatory damages" because the outcome of his case in the St. Joseph County Courthouse was not affected in any way, nor that any jurors, witnesses, or counsel were unable to participate. But Hummel need not establish that he was entirely prevented from accessing court services: "[i]f the Courthouse's wheelchair ramps are so steep that they impede a disabled person or if its bathrooms are unfit for the use of a disabled person, then it cannot be said that the trial is 'readily accessible,' regardless of whether the disabled person manages in some fashion to attend." *Shotz*, 256 F.3d at 1080; *see also Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 861 (10th Cir. 2003) (quoting *Shotz* to the effect that facilities must be "readily accessible"). And the County Defendants do not direct the Court to any authority in support of its position that "compensatory damages"—which the Court takes to mean economic or noneconomic harm caused by the alleged violations—are a necessary element of a cause of action under Title II of the ADA or Section 504 of the Rehabilitation Act. As long as Hummel himself encountered barriers in violation of the ADA, he was discriminated against. And since he has alleged that the discrimination was intentional, he has stated a cause of action under the ADA. Without allegation or proof of actual compensable harm, he may only be entitled to no more than nominal damages, but his claim is sufficient to survive a motion to dismiss.

In sum, Hummel alone has standing to sue and has stated a cause of action against the County Defendants. The Court notes that, going forward under the allegations of the complaint in its present form, Hummel's claims are limited to the vindication of past harms that he personally encountered during his visits to the St. Joseph Superior Court: he cannot challenge the

accessibility of elements of the building, such as jury boxes, that did not cause him personal injury.

## Conclusion

For the reasons given, the County Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Court lacks jurisdiction to consider Plaintiffs' claims for prospective relief. The claims for injunctive and declaratory relief are therefore DISMISSED WITHOUT PREJUDICE. Means's and Matney's claims for compensatory damages are likewise DISMISSED WITHOUT PREJUDICE, for want of a case or controversy to support the Court's jurisdiction. But Hummel's claims for damages based on past discrimination he personally encountered are sufficient to survive the County's Motion to Dismiss for failure to state a claim. Plaintiffs may seek leave to file an amended complaint in regards to the dismissed claims if they can replead their claims, sufficient to establish the standing requirements identified in this order. However, if Plaintiffs do intend to file an amended complaint, the Plaintiffs must file a motion seeking leave to file an amended complaint by **October 7, 2011**.

SO ORDERED.

ENTERED:     September 16, 2011

/s/ JON E. DEGUILIO
Judge
United States District Court