UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| VICTORIA MEANS, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>ST. JOSEPH COUNTY BOARD )<br>OF COMMISSIONERS, et al., )<br>)<br>Defendants. ) | No. 3:10-CV-003 JD |

**MEMORANDUM OPINION AND ORDER**

In January 2010, Victoria Means, Tonia Matney, Stephen Hummel, and Margaret Hummel filed this lawsuit to redress alleged violations of Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and provisions of the state and federal Constitutions.[1] They alleged that the St. Joseph Superior Court, in St. Joseph County, Indiana, is discriminating against them by failing to make the St. Joseph County Courthouse in downtown South Bend and the Mishawaka County Services Building in Mishawaka readily accessible to individuals with disabilities, as required by the ADA. They also sued the St. Joseph County Board of Commissioners and the City of South Bend for failing to provide sufficiently plentiful handicapped-accessible public parking near the Mishawaka and South Bend buildings, respectively. In March 2010, Plaintiffs filed an amended complaint. *See* DE 27. The deadline for discovery passed at the end of November, and on January 28, 2011, the two County Defendants filed a Motion to Dismiss, which is the subject of a separate order. *See* DE 38, DE 55.

On the same day, the City filed the Motion for Summary Judgment now before the Court,

---

[1]Margaret Hummel, the late wife of Plaintiff Stephen Hummel, was termed from the case on May, 3 2010.

attaching just three exhibits reflecting the universe of facts it believes material to its motion. By way of response, Plaintiffs sought and received leave to file an affidavit by Kent Hull, their attorney of record, and in their May 26, 2011, response brief, Plaintiffs argue that the statements in that affidavit create genuine issues of material fact necessitating a trial.[2] The City filed its reply brief on June 8, 2011.

For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part. The court also DISMISSES, *sua sponte*, those claims that Plaintiffs lack standing to bring.

## I. Facts

The following facts are viewed in the light most favorable to the non-movants.

All three current Plaintiffs are persons with disabilities who reside in St. Joseph County, Indiana. *See* DE 27, ¶¶ 4–7. Mss. Means and Matney, who both use wheelchairs, were sued in the Small Claims Division of the St. Joseph Superior Court. *See* DE 27, ¶ 6. As of January 2011, the lawsuit against them was still pending, but subject to an indefinite continuance granted at the plaintiff's request nearly a year before, in February 2010. *See* DE 39-1 at 2.[3] Mr. Hummel and his late wife, who are both limited in mobility, initiated a lawsuit in the plenary docket of the St. Joseph Superior Court in 2006, but the case was decided against them in September 2009, a

---

[2]The City contests the propriety of allowing Mr. Hull's affidavit, arguing that it is improper for Hull to be both witness and advocate, and that the content of the affidavit is not relevant evidence within the definition of Federal Rule of Evidence 401 because it has nothing to do with the experience of Plaintiffs themselves. The magistrate judge in this case ruled that the affidavit would be admissible for purposes of summary judgment, but reserved the question of whether Mr. Hull would be permitted to testify at any eventual trial. [DE 49] There is some tension between this reservation and Federal Rule of Civil Procedure 56(c)(4), which provides that affidavits may be considered on summary judgment only if the "facts would be admissible in evidence, and . . . the affiant or declarant is competent to testify on the matters stated." The Court will include in its discussion the facts from the affidavit that Plaintiffs cite in their response brief, but need not revisit whether the affidavit should be allowed because it concludes that the facts in the affidavit are immaterial to the issues properly before the Court.

[3]Because of concerns about the Plaintiffs' standing to sue, the Court includes evidence relevant to standing from elsewhere in the record to determine whether it has jurisdiction over these claims, even though the parties have not brought it to the Court's attention for summary judgment purposes. *See* Fed. R. Civ. P. 56(c)(3).

motion to correct errors was denied just after the complaint was filed in this case, and the Hummels did not appeal the judgment. *See* DE 39-2.

The City of South Bend is a municipal corporation. *See* DE 27, ¶ 16; DE 19, ¶ 16. The Courthouse is located at 101 South Main Street in downtown South Bend, Indiana, on a city block bounded by Main Street on the east, Jefferson Boulevard on the south, Lafayette Boulevard on the west, and Washington Street on the north. *See* DE 37-1, ¶ 4. The Small Claims Division is located in a separate building, adjacent to the Superior Court Courthouse.[4] The City does not own, operate, lease, or have any other proprietary interest in the Courthouse, but is responsible for planning, maintaining, and overseeing on-street parking and parking garages in the vicinity of the Courthouse. *See* DE 37-1, ¶ 2; DE 27, ¶ 16; DE 19, ¶ 16. The only handicapped-accessible entrance to the Courthouse is located on the west, Lafayette Boulevard façade of the City-County Building: visitors take an elevator to a basement from which a passageway leads to the Courthouse. *See* DE 37-1 ¶ 5. Plaintiffs do not allege that the City has any connection to parking near the Mishawaka County Services Building in the City of Mishawaka.

Out of the 59 on-street parking spaces closest to the accessible Lafayette Boulevard entrance to the Courthouse, 7 are designated handicapped—roughly 11.8%. *See* DE 37-1, ¶ 5. Of the 85 total on-street parking spaces in the four block area surrounding the Courthouse, at least 7 are designated handicapped—roughly 8.2%.[5] *See* DE 37-2. Of these, two two-hour parking

---

[4]The Court takes judicial notice of the location of the county courthouses in downtown South Bend, as this fact is generally known in the area, readily determinable from publicly available information, and not subject to reasonable dispute by the parties. *See* Fed. R. Evid. 201.

[5]The "Geographic Information System" map provided by the City appears to show nine spaces in this four block area, but the summary information is partially cut off by the City's exhibit stamp.

spaces are located on Lafayette Boulevard near the entrance to the Courthouse, two more two-hour parking spaces are located just around the corner on Jefferson Boulevard, near where it intersects with Lafayette, and one four-hour parking space is provided near the northwest corner of Jefferson Boulevard and Main Street. *See id.*; DE 37-1, ¶ 6.

Plaintiffs Means and Matney have not been personally affected by the alleged insufficiency of handicapped-accessible parking in the vicinity of the Courthouse, but during their litigation, their attorney found it necessary to have his wife drive him to Small Claims Court because of the limited number of spaces, their location, their distance from the Courthouse, and the inaccessibility of curb-cut ramps during inclement winter weather. *See* DE 53-1, ¶ 11. Plaintiff Hummel and his wife, however, "were required to park three blocks west of the Courthouse and walk in order to avoid getting a ticket and avoid paying garage fees." *See* DE 37-3 at 5.

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate only when no reasonable jury could reach a verdict in the non-movant's favor. *Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834, 839 (7th Cir. 2011). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the

governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To establish a genuine issue of fact, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial, not simply show that there is "some metaphysical doubt as to the material facts." *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 691 (7th Cir. 2010) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Further, "[i]t is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). If the nonmoving party fails to establish the existence of an essential element on which it bears the burden of proof at trial, summary judgment is proper—even mandated. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

In ruling on a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. A court must avoid the temptation to "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Id.*

### III. Legal Analysis

Initially, the Court notes that the City, intentionally or not, limits its argument for summary judgment to those claims based on Plaintiffs' past encounters with the alleged lack of

accessible parking. But there are really two sets of claims: claims for damages based on past experience; and claims for prospective relief based on the continuing nature of the ADA violations. The Court will consider the City's arguments in support of its Motion for Summary Judgment as they relate to past injuries first, and then turn to Plaintiffs' claims for prospective relief and consider, as it must, whether Plaintiffs have standing to seek such relief.

**A.     Claims Based on Past Injuries**

        1.     *Plaintiffs Means and Matney Have No Standing to Seek Damages*

The City argues that Plaintiffs Means and Matney have not alleged or offered any evidence that they were personally affected by the alleged inadequacy of accessible parking near the County Courthouse, and that therefore these Plaintiffs lack standing to sue. The doctrine of standing polices the outer limits of federal judicial power under Article III of the Constitution: unless a claim involves an actual "Case" or "Controversy," federal courts have no subject-matter jurisdiction over it. *Ezell v. City of Chicago*, No. 10-3525, 2011 WL 2623511, at *7 (7th Cir., July 6, 2011); *Lee v. City of Chicago*, 330 F.3d 456, 469 (7th Cir. 2003). "Standing exists when the plaintiff suffers an actual or impending injury, no matter how small; the injury is caused by the defendant's acts; and a judicial decision in the plaintiff's favor would redress the injury." *Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir. 2010) (citing *Summers v. Easrth Island Inst.*, 555 U.S. 488, 129 S.Ct. 1142, 1149 (2009)). The Court agrees with the City: regardless of whether the parking scheme near the County Courthouse in downtown South Bend violates the ADA, Plaintiffs Means and Matney have not alleged or proved that they have personally encountered or otherwise been harmed by the alleged violations.

Plaintiffs do not address the City's standing arguments in their response. But were the

Court to consider the contested affidavit of attorney Hull, discussed above, it would have evidence before it that *Hull* encountered barriers caused by inclement winter weather during the course of his representation of Means and Matney. And, in the Amended Complaint, Plaintiffs claim that they sue because they were discriminated against not only on the basis of their own disability but also that of their attorney's disability. *See* DE 27. The Court notes that Plaintiffs have made no effort to develop this legal theory since the Amended Complaint, even in response to the City's Motion for Summary Judgment. In any event, there is no basis for associational injury in this case.

Unlike Titles I (employment discrimination) and III (public accommodation), Title II of the ADA does not expressly prohibit what is called discrimination by association, but the implementing regulations import this prohibition into Title II's prohibition of discrimination by public entities: "A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 28 C.F.R. § 35.130(g). The examples given in the Appendix to that regulation make clear that an associated individual is not permitted to sue just because the disabled individual is injured, but only when the associated individual is herself injured. Thus, a local government may not refuse the use of a school auditorium to a theater company on the grounds that the company had recently performed for an audience of HIV-positive individuals. 28 C.F.R. Pt. 35, App. A at 573 (analysis of § 35.130). And "if a public entity refuses admission to a person with cerebral palsy *and his or her companions*, the companions have an independent right of action under the ADA." *Id.* (emphasis added). Courts, including others in this Circuit, have extended this logic to other similar

situations. *See, e.g.*, *Schneider v. County of Will, State of Ill.*, 190 F. Supp. 2d 1082 (N.D.Ill. 2002) (unsuccessful applicants for bed and breakfast with handicapped-accessible guest rooms had standing to sue: they were injured when the county denied permit allegedly because of the disabled status of prospective clientele); *Discovery House, Inc. v. Consol. City of Indianapolis*, 43 F. Supp. 2d 997 (N.D.Ind. 1999) (drug rehabilitation center had standing to bring ADA claim on the basis that it was denied permit because some prospective clients would be disabled), *overruled on other grounds by* 219 F.3d 277 (7th Cir. 2003).

From these examples, it is plain that the alleged discrimination by association in this case is not the sort contemplated in the regulation. Attorney Hull may himself have an injury that would support his own standing, but there is no evidence (nor even any allegation) that Means or Matney themselves suffered any injury because of their relationship with their disabled attorney. Thus, even if Plaintiffs had made an argument for discrimination by association based on Hull's affidavit, and even if the Court were to consider the evidence in that affidavit, Means and Matney have not been injured because of their association with Hull, and they do not have standing to sue for any injury he suffered.

2.  *Plaintiff Hummel's Claim for Damages under the ADA and Rehabilitation Act Fails as a Matter of Law*

The City acknowledges that Plaintiff Hummel has put forward evidence that he and his late wife were personally affected by the claimed dearth of accessible parking near the County Courthouse. Thus, there is no question but that Hummel has standing to sue for compensatory damages—the same rationale applies here, *mutatis mutandis*, that led to the Court's prior holding that Hummel may sue the County Defendant's for past encounters with alleged ADA violations.

Instead, the City argues that it is entitled to summary judgment on the question of whether the parking scheme for the area around the County Courthouse violates the ADA.[6] The Court agrees that the record in this case cannot, as a matter of law, support a finding that the City has violated the ADA by failing to provide adequate handicapped-accessible public parking.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. An individual with a disability may establish a claim under Title II by "evidence that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *Wis. Comm. Serv. Inc. v. City of Milwaukee*, 465 F.3d 737, 751 (7th Cir. 2006) (en banc). As alleged, Mr. Hummel's claim appears to be that, despite knowledge of the inadequacy of parking in the vicinity of the Courthouse, the City has refused to provide reasonable accommodations to individuals by providing sufficiently plentiful handicapped-accessible parking close to the Courthouse.

The City points out that the only evidence in the record supporting Plaintiffs' allegation that "accessible parking for individuals with disabilities driving to conduct business in the Courthouse in South Bend . . . is not sufficiently plentiful and is located at great distances from the Courthouse" is found in Plaintiffs' answers to the City's interrogatories, where they state that "Stephen and Margaret Hummel were required to park three blocks west of the Courthouse and

---

[6] Because the ADA was built on and extends the reach of the Rehabilitation Act, *Wis. Comm. Serv. v. City of Milwaukee*, 465 F.3d 737, 751 (7th Cir. 2006), and the Rehabilitation Act prohibits the same or substantially similar conduct as the ADA, *see* 29 U.S.C. § 794(a), the Court will consider to two claims together.

walk in order to avoid getting a ticket and avoid paying parking garage fees." *See* DE 37-3 at 5. From this, the City infers that the Plaintiffs are arguing that there is an insufficient number of free, handicapped-accessible parking spaces on the streets nearest to the County Courthouse. Against this claim, the City points the Court to an affidavit from Marcia Qualls, a Customer Service Coordinator for the City of South Bend whose job responsibilities include "coordinat[ing] and receiv[ing] information regarding South Bend's street parking and parking garages," *see* DE 37-1 at 1, and a "Geographic Information Systems" map that identifies the various types of street parking available for the city-block immediately surrounding the Courthouse, *see* DE 37-2. This evidence establishes that 7 out of the 59 street parking spaces closest to the handicapped-accessible entrance to the Courthouse—roughly 11.8%—are handicapped-accessible. *See* DE 37-1 at 3. Based on the map, it appears that if the entire four-block area surrounding the Courthouse is considered, the approximate percentage of handicapped-accessible parking spaces drops to 8.2%.

In response, the Plaintiffs do not dispute the parking information put forward by the City, or point to any evidence in the record from which the Court could draw an inference that the City has overstated the ratio of handicapped-accessible parking spaces to total street parking spaces. Relevant to street parking, the genuine disputes of material fact that they argue will require a trial are limited to the availability of long-term free street parking for individuals with disabilities.[7]

---

[7] Plaintiffs also dispute facts concerning the location and accessibility of a nearby parking garage, and the accessibility of street parking in inclement winter weather. But the accessibility of the parking garage (or the ownership, which is also in dispute) is immaterial to Hummel's claims under the ADA because there is no evidence that Hummel ever parked in the garage. And the Court is aware of no evidence that Hummel was in any way affected by winter weather conditions in his efforts to reach the Courthouse. So the Court limits its discussion to the claimed insufficiency of free, on-street, accessible public parking near the courthouse.

The Court holds that, based on the undisputed facts in this case, Hummel cannot establish the elements of a violation of Title II of the ADA and thus that the City is entitled to judgment as a matter of law. First, it is not clear that Hummel even disputes that the City provides a sufficient number of handicapped-accessible street parking spaces. And while Hummel directs the Court to nothing in the ADA or its implementing regulations, manuals, or Accessibility Guidelines directly related to handicapped-accessible on-street parking, the Court will assume (and the City does not dispute) that the City is required to provide handicapped-accessible on-street parking so long as it provides on-street parking to the general public. *See Lang v. Crocker Park, LLC*, 2010 WL 3326867, at *3 (N.D. Ohio., Aug. 20, 2010) ("[T]here is no express requirement to provide on-street parking in the [Accessibility Guidelines] . . . . However, if the Defendants are going to provide on-street parking to the non-disabled, they may be required to provide disabled parking as well.").

While it agrees with *Daubert v. City of Lindsay*, No. 1:08cv01611, 2009 WL 4135861, at *5 (E.D. Cal., Nov. 23, 2009), that imposing liability for inadequate (as opposed to a total lack of) street parking "would impose potential liability where there is no guiding regulation," the Court will assume, for argument's sake, that liability could be imposed based on other relevant parking regulations. *See Lang,* 2010 WL 3326867, at *4–5. Still, the only guidance even marginally relevant in the Accessibility Guidelines is found in the requirements for new construction of parking lots and parking garages. And assuming, again for the sake of argument and contra the court's conclusion in *Daubert*, 2009 WL 4135861, at *5,[8] that those guidelines

---

[8] "[I]t would seem improper to assume that the same requirements for lot/on-site parking would apply to on-street parking. There are likely different considerations for on-street parking, the most obvious of which is the smaller amount of space within which to work imposed by the characteristics of an active street." *Daubert*, 2009 WL 4135861, at *5.

may fairly be applied to street parking, the City's undisputed evidence shows that the ratio of handicapped to general on-street parking spaces closest to the handicapped significantly exceed the Accessibility Guidelines requirements for new construction of parking lots and parking garages, with which "any part of a public entity's facility constructed after January 26, 1992 must be in conformity." *Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899, 923 (N.D. Ill. 2009) (quoting *Pierce v. County of Orange*, 526 F.3d 1190, 1216 (9th Cir. 2008)); *see also* 28 C.F.R. § 35.151. Those guidelines would require 3 accessible spaces for a parking lot with 51 to 75 total spaces (4–5.6%), and 4 accessible spaces for a total of 76 to 100 spaces (4–5.3%). *See ADA Accessibility Guidelines for Buildings and Facilities,* § 4.1.2(5)(a); DE 37-4 at 7. In fact, the 7 handicapped-accessible spaces within a one-block walk of the City–County Building would satisfy the Accessibility Guidelines' requirements for the new construction of a 300-space lot or garage. At least one court has found that a similar ratio satisfies the reasonable accommodation provisions of the ADA. *See Ehrlich v. Gatta*, 2009 WL 3213715, at *3–4 (S.D.N.Y, Oct. 5, 2009) (holding that 9 handicapped-designated spaces out 400-plus total spaces in close proximity to a train station (2.25%), which included 5 out of 100 metered spaces at the station (5%), was a reasonable accommodation under the ADA).

Finally, even if it were to assume that the ADA might require a *higher* ratio of on-street spaces than the Accessibility Guideline specify for new construction, despite the concerns it has already identified, the Court would still hold that no reasonable jury could find an ADA violation where a municipality has dedicated greater than 10% of the on-street parking nearest public facilities exclusively for the use of individuals with disabilities. Thus, even if Hummel has preserved an argument that the City's handicapped-accessible street parking is insufficiently

12

numerous, and even granting all of the assumptions above—which would be far more generous than any other case within the Court's knowledge—no reasonable factfinder could conclude that the ratio of handicapped-accessible on-street spaces to total on-street spaces violates the ADA. The City is entitled to judgment as a matter of law on this claim. *See* Fed. R. Civ. P. 56(a).

Second, to the extent that Hummel argues that the City was required to provide him with long term on-street handicapped-accessible parking close to the Courthouse, this claim also fails as a matter of law. Courts that have considered the issue have held that while public entities must reasonably accommodate individuals with disabilities, the ADA does not entitle those individuals to special parking access not available to the general public. Thus, in *Jones v. City of Monroe*, 341 F.3d 474, 479 (6th Cir. 2003), the court held that because both disabled and non-disabled individuals were subject to one-hour limits in all on-street spaces in the downtown business district, the city was not required to provide a special benefit of all-day free parking for disabled individuals. And in *Kornblau v. Dade County*, 86 F.3d 193, 194 (11th Cir. 1996), the Eleventh Circuit refused to require the county to provide parking for disabled individuals in an employees-only lot that was closest to the county building, explaining that "nothing in the Act, its purpose, or the regulations can reasonably be read to give disabled parkers access to areas that would not be available to them if they were not disabled." Similarly in this case, the only plausible inference from Hummel's evidence and argument is that he is seeking a special parking benefit—access to free, all-day parking in the immediate vicinity of the Courthouse—that is not generally available to non-disabled members of the public. As things stand, Hummel had the same parking options as anyone else: short-term on-street parking near the Courthouse, long-term parking in garages or lots for a fee, or free on-street parking several blocks farther away

from the Courthouse. The City was not required to provide free long-term parking in the immediate vicinity of the Courthouse for individuals with disabilities.

      3.     *Plaintiff Hummel has Failed to Develop His Constitutional Claims*

In their complaint, Plaintiffs also allege that the City has violated its federal constitutional rights to due process and equal protection of the laws, as guaranteed by the Fourteenth Amendment, and their rights of access to open courts and equal privileges and immunities, in violation of the Constitution of the State of Indiana, Article 1, Sections 12 and 23, respectively. As a preliminary matter, however, the Court reiterates that Mr. Hummel is the only Plaintiff with standing to pursue such claims and that Mss. Means and Matney lack standing to pursue claims based on the City's past conduct because they have not alleged that they have suffered any injury caused by the City's parking scheme.

In its Motion for Summary Judgment, the City challenges these claims by arguing that Mr. Hummel has not alleged any facts that would constitute a federal constitutional violation, nor provided any legal authority or argument for the proposition that insufficient handicapped-accessible parking in the vicinity of a courthouse amounts to a violation of the Fourteenth Amendment. Concerning the state constitutional claims, the City argues that "there is no Indiana authority for the proposition that South Bend's handicapped Parking allocation constitutes a violation of the Indiana constitution." *See* DE 37 at 11. Plaintiffs make no response at all to the City's challenge to its causes of action under the federal and state Constitutions.

Based on this complete failure to defend against the City's arguments, the Court grants the City's Motion for Summary Judgment on these constitutional claims. It is not the Court's job to conduct legal research and construct legal arguments for the parties. *See Gross v. Town of*

*Cicero*, 619 F.3d 697, 704 (7th Cir. 2010). In fact, "[i]t is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." *Domka v. Portage County*, 523 F.3d 776, 783 (7th Cir. 2008) (quoting *Liberales v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir. 1983)). The City has called Plaintiffs' bluff, and absent some explanation of a viable legal theory to support the constitutional claims, those claims may not proceed to trial.

**B.     Claims for Prospective Relief**

Next, the Court considers Plaintiffs' claims for injunctive and declaratory relief based on the threat of future harm, rather than past encounters. First, the Court notes that the City has made no argument nor put forward any evidence specifically with respect to the Plaintiffs' future-oriented claims. To the extent the City's motion seeks judgment on these claims, it is denied. That does not quite end matters in this case, however, because the Court must consider its own jurisdiction to hear the case, whether directed by the parties or on its own accord, and the Court does not have jurisdiction over this case to the extent that Plaintiffs lack standing to bring particular claims. *Ezell*, 2011 WL 2623511, at *7. The Court has already held that Hummel lacks standing to pursue prospective relief against the County Defendants because he has no pending case and has not alleged that he has any intention of returning to the Courthouse for any reason. *See* DE 55, at 12. For the same reasons outlined there, the Court lacks jurisdiction to consider Hummel's claim for prospective relief against the City.

Based on the only evidence the Court has before it, however, Means and Matney appear to have standing to pursue their claims for prospective relief. According to the docket sheet

submitted by the County Defendants with their Motion to Dismiss and accompanying memorandum and exhibits [DE 38, 39, 39-1], it appears that the case of *Dunedin Apts. v. Matney and Means*, Cause No. 71D01-0911-SC-11358 was still pending as of January 27, 2011. If this case is still pending and is, in fact, a live controversy that may require Means and Matney to appear in court at any time, the Court is satisfied that the continuing nature of the litigation is sufficient to provide standing for Means and Matney to challenge the conditions of handicapped-accessible public parking in the vicinity of the Courthouse.

## Conclusion

For the foregoing reasons, the City's Motion for Summary Judgment is GRANTED with respect to Plaintiff Hummel's claims for damages and DENIED with respect to Plaintiffs Means's and Matney's claims for prospective relief. The damages claims of Means and Matney are DISMISSED for want of standing, as are Hummel's claims for prospective relief.

SO ORDERED.

ENTERED:   September 26, 2011

/s/ JON E. DEGUILIO
Judge
United States District Court