UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| VICTORIA MEANS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 3:10-CV-003 JD |
| | ) |
| ST. JOSEPH COUNTY BOARD OF | ) |
| COMMISSIONERS, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Most of the Plaintiffs in this case are allegedly disabled citizens of St. Joseph County, Indiana. Some of them sued the St. Joseph County Board of Commissioners, the St. Joseph County Superior Court (collectively "the County"), and the City of South Bend ("the City") in January 2010 over the accessibility of the St. Joseph County Courthouse, located in South Bend (the "South Bend Courthouse"), and the Mishawaka County Services Building, located in Mishawaka (the "Mishawaka Courthouse"). Discovery originally closed in the case in December 2010. Since then, the Court has addressed several dispositive motions and a motion for preliminary injunction. Some of the original Plaintiffs have dropped out; others have been added. Discovery has twice been briefly reopened, but finally closed on September 3, 2013.

Now before the Court are three discovery motions filed by the Plaintiffs. First, Plaintiffs move the Court to take judicial notice of certain statements located on the County website. [DE 144.] Second, Plaintiffs move to compel responses to discovery requests propounded to the City and ask the Court to deem admitted requests for admission propounded to the City. [DE 145.] Third, Plaintiffs move to compel responses to discovery requests propounded to the County and

ask the Court to deem admitted requests for admission propounded to the County. [DE 148.] Each of these motions is now ripe for decision.

For the reasons described below, Plaintiffs' Motion to Take Judicial Notice of County Website is **DENIED** without prejudice; Plaintiffs' Motion to Compel Discovery Propounded to Defendant City of South Bend and to Deem Admitted Requests for Admission is **GRANTED IN PART** and **DENIED IN PART**; and Plaintiffs' Motion to Compel Discovery Propounded to Defendants St. Joseph County Board of Commissioners and St. Joseph County Superior Court and to Deem Admitted Requests for Admissions is **DENIED**.

## I. Background

The resolution of some of the disputes at issue here depend on a determination of whether certain evidence is relevant or calculated to lead to the discovery of relevant evidence. In order to frame the discussion of what is or is not relevant, a short procedural background of the case proves helpful.

The lawsuit began in 2010 with four named Plaintiffs. Those Plaintiffs had then-pending lawsuits in either the Small Claims Division of the St. Joseph Superior Court ("Small Claims Division")[1] or the plenary docket of the St. Joseph County Superior Court, in which cases are heard in either the South Bend or Mishawaka Courthouse.[2] This federal lawsuit alleged two types of claims: claims for monetary damages based on past inaccessibility of the South Bend and Mishawaka Courthouses (and the streets surrounding those courthouses) and claims for prospective relief based on allegedly continuing ADA violations. Discovery was conducted and closed—for the first time—on November 30, 2010.

---

[1] The Small Claims Division is housed in a separate courthouse adjacent to the South Bend Courthouse.

[2] None of the original Plaintiffs' cases were being heard at the Mishawaka Courthouse.

In January 2011, the City filed a motion for summary judgment [DE 36] and the County filed a motion to dismiss for lack of standing and for the failure to state a claim [DE 38]. Each motion was granted in part. [DE 55, 56.] In ruling on those motions, the Court held that each Plaintiff needed standing in order to seek prospective claims, which required at least some "present business in the courthouse buildings or concrete plans for future business." [DE 55 at 8.] Because none of the Plaintiffs had an active case in either the South Bend or Mishawaka Courthouse, their prospective claims against the County were dismissed for lack of standing.[3] The Court also addressed each of the plaintiffs' claims for past damages. The only claims that survived the Court's rulings on the first round of dispositive motions were Mss. Mean's and Matney's claims for prospective relief against the City[4] and Mr. Hummel's claim for past damages against the County.

After that ruling, the Plaintiffs filed their now-operative pleadings: a Second Amended Complaint (which was incorrectly labeled their First Amended Complaint), filed on December 7, 2011 [DE 73], and a Supplemental Complaint filed on January 3, 2012 [DE 78]. In addition to the surviving claims from the original Plaintiffs, the new complaints alleged claims on behalf of five additional Plaintiffs, who had lawsuits in either the Small Claims Division or at the South Bend or Mishawaka Courthouse.

After the filing of the Second Amended Complaint and the Supplemental Complaint, Plaintiffs filed a motion for preliminary injunction against the County, seeking an order compelling the County to comply with the Americans with Disabilities Act. [DE 82.] On

---

[3] At the time of that ruling, Mss. Means and Matney did have a pending lawsuit in the Small Claims Division. Since the parking and snow removal near the South Bend Courthouse equally affected access to the Small Claims Division, the Court found they did have standing to sue the City for prospective relief.

[4] On a motion by the City, the Court amended its summary judgment order to dismiss the prospective claims of Mss. Means and Matney against the City for lack of standing once their lawsuit was no longer pending. [DE 126.]

February 9, 2012, the Court reopened discovery in order to allow discovery on the motion for preliminary injunction. [DE 97.] Discovery closed—for the second time—on May 11, 2012. The Court denied Plaintiffs' motion for preliminary injunction. [DE 129.]

Since the denial of Plaintiffs' motion for preliminary injunction, the Court has attempted to guide this case towards trial. The Court held several status conferences to determine whether the Plaintiff intended to add additional parties and whether the parties required additional limited discovery. [DE 134, 143, 152.] At the June 5, 2013 status conference the Court inquired of the parties' need for additional discovery. Counsel for the Plaintiffs stated: "There have been some developments which I would like to verify." [DE 143 at 3:18–20.] Counsel then discussed anticipated changes to one of the restrooms in the South Bend Courthouse and the appointment of Aladean DeRose—who is counsel for the City in this lawsuit—as ADA coordinator for the City. *Id.* at 3–4. Plaintiffs believed that Ms. DeRose's role included involvement in some sort of plan regarding current steps to bring the city's sidewalks into ADA compliance. *Id.* at 4–8. Counsel for the City indicated a desire for discovery limited to supporting their pending motion to dismiss and to whether any emergency situation required the City's attention. *Id.* at 10:3–6; 18:9–11. Counsel for the County did not express any need for additional discovery. *Id.* at 9:24–10:1.

During that June status conference, the Court reopened discovery until September 3, 2013, for the limited purposes identified by the parties during the June status conference. Discovery closed—for the final time—on September 3, 2013. In August, Plaintiffs filed their motion to take judicial notice of one part of the County's website. Approximately two weeks after the close of discovery, Plaintiffs filed their motions to compel and to deem certain requests for admission as admitted. Each of those motions is addressed, in turn, below.

4

## II. Motion to Take Judicial Notice

Plaintiffs request that the Court take judicial notice of certain statements contained on the website of the County.[5] Specifically, Plaintiffs ask the Court to take judicial notice that the following text can be found on that website:

> The St. Joseph County Courthouses are not only home to the local St. Joseph courts, but also to a trove of legal and historical art. Upon entering the 1855 courthouse one is confronted with its original entrance. The original doorway, surrounded by Lemont limestone, is still in its original condition. If one continues through the entrance and down the hall they will be confronted with a plaque that details the history of both the 1855 and 1896 courthouses. However, if one travels up the stairs to the Traffic & Misdemeanor Court one can see a wonderful representation of period architecture and woodwork.
>
> The 1855 courthouse is not the only place where such art and woodwork can be found. In the 1896 courthouse one must only walk into the rotunda and lookup to witness the truly magnificent craftsmanship that covers the inside of the dome. At the base of the woodwork, along the walls, are murals depicting scenes of when the explorer LaSalle explored the area of St. Joseph County, between 1679-1680. Also along the second floor rotunda is a portrait of F. Kenneth Dempsey, Judge of the St. Joseph Superior Court from 1955-1973, who helped preserve the courthouse and its heritage for the people of St. Joseph County. Almost every courtroom is an impressive work of craftsmanship and history, preserved in its original state.
>
> Finally, upon leaving the courthouse, one should stop and view the Civil War Memorial that is placed on the corner of Main St. and Washington St. It is a memorial dedicated to the men, from this county, who fought and died during the Civil War. The memorial lists both the names the companies raised in St. Joseph County and the major battles in which those units took part. These are all important pieces of St. Joseph County heritage that have been preserved for the benefit they provide to the People of St. Joseph County.

[DE 144 at 1–2.] The Court has viewed the website and found that it did contain the quoted language as of the date of this Opinion.

The County did not file any written response to the motion to take judicial notice, but responded orally to that motion during the September status conference. The County's attorney argued that the information on which Plaintiffs seek judicial notice lacks probative value. [DE

---
[5] The specific webpage is located at http://www.stjosephcountyindiana.com/departments/courts/HistoryCourts.htm.

152 at 11:1–7.] Plaintiffs responded that the statements on the County website make clear that the County invites the public to the South Bend Courthouse, not only as litigants but also for the artistic value that the courthouse provides. [DE 152 at 16:24–20:2.]

A court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources who accuracy cannot reasonably be questioned." Fed R. Evid. 201(b). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). The contents of government websites are a proper item of which to take judicial notice. *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003).

However, a court need not take judicial notice of documents that are irrelevant to the issues at trial. *See, e.g., Sunstar, Inc., v. Alberto-Culver Co., Inc.*, Nos. 01 C 736, 01 C 5825, 2006 WL 6505615, at *3 (N.D. Ill. Nov. 16, 2006) (citing *United States v. Falcon*, 957 F. Supp. 1572, 1585 (S.D. Fla. 1997) ("a court may refuse to take judicial notice of facts that are irrelevant to the proceeding")). One reason for such a prohibition is that, "[i]n a civil case, the court must instruct the jury to accept the noticed fact as conclusive." Fed. R. Evid. 201(f).

While the Court agrees that the information found on the County's website can be accurately and readily determined from a source whose accuracy cannot reasonably be questioned, the Court is not convinced of the relevance of that material at this time. While Plaintiffs argue that the County invites citizens to the South Bend Courthouse, no plaintiffs have alleged that they tried to go admire the craftsmanship and history of the South Bend Courthouse but have been unable to do so or, in the alternative, that they have concrete or imminent plans to

do so.[6]  Absent such an allegation or proof, the material does not have any tendency to make a fact of consequence in determining this action more or less probable.

Accordingly, the motion to take judicial notice is **DENIED** without prejudice.  Plaintiffs may re-file the motion to take judicial notice (or offer the contents of the County website at trial) if later evidence establishes the probative value of those statements.

### III.  Motion to Compel Against the City

After discovery was reopened following the June status conference, Plaintiffs served discovery requests on the City.  Believing the City's responses were insufficient, Plaintiffs now seek to compel answers to certain unanswered requests, seek to deem as admitted the unanswered requests for admission, and seek an award of attorney's fees related to the motion to compel.

The Consolidated Discovery Requests propounded by Plaintiffs against the City can be broadly divided into three categories:  (1) requests to admit that—as of certain dates in the 1980s and 1990s—the city had not completed a self-evaluation or transition plan under the ADA or Rehabilitation Act (First through Fourth Consolidated Requests); (2) requests to produce information related to any self-evaluation or transition plan under the ADA or Rehabilitation Act (Fifth and Sixth Consolidated Requests); and (3) requests to produce information related to the appointment of Aladean DeRose as the ADA Coordinator for the City (Seventh Consolidated Request).  The City answered each of the requests with a general objection.  In that general objection, the City objected that: (1) the total number of requests exceeded the limit established by the Local Rules and (2) the information requested is not relevant to the matters at issue in the case.

---

[6] At most, certain Plaintiffs alleged that they "otherwise will utilize the two courthouses in [their] exercise of citizen rights."  [DE 73 at ¶¶ 9–11; DE 78 at ¶ 10(a).]  For the purposes of this ruling, the Court does not find that such an allegation is a "concrete plan" sufficient to confer standing.

The City did not file a written response to Plaintiffs' motion to compel. During the September status conference, the City responded orally to that motion. The City raised the arguments it had made in its general objection and further argued that it cannot be sure whether responsive documents exist, due to the age of any such documentation. [DE 152 at 5:15–6:7.] Plaintiffs, in turn, argued that the requests are relevant to the question of the City's intent or deliberate indifference with respect to the accessibility of the parking and snow removal near the South Bend Courthouse. Plaintiffs argue that such proof is relevant to the question of damages. [DE 152 at 7:10–22.] Plaintiffs additionally filed a brief of supplemental authorities in support of their motion to compel [DE 153], to which the City did not respond.

One of the City's objections to the requests may be disposed of quickly. While the City objected that the Plaintiffs' requests exceeded the number allowed by local rule, the Court specifically engaged in a colloquy on the record during the June status conference with Plaintiffs' counsel regarding the number of requests:

> MR. HULL: . . . If I may get back to the issue of discovery, just so I understand what Your Honor was saying earlier – and the September 1 deadline is fine with me – ordinarily when you file a case you have a Rule 16 conference with the magistrate judge who sets limits, like so many interrogatories, so many – that kind of thing – in order words, is there a limit on the number of interrogatories or anything in this new phase of discovery?
>
> THE COURT: I would say no, there's not a per se limitation, but if you draw up a thousand interrogatories on Ms. DeRose and she wants to challenge that, I'd be receptive to it.

[DE 143 at 28:12–23.] The City did not seek relief from the Court regarding the number of requests filed by the Plaintiffs. Accordingly, the number of requests by Plaintiffs did not exceed the number allowed by the Court.

The remaining arguments relate to specific categories of requests or requests for admission, which will be addressed by category below.

8

**A. Requests to Admit Failure to Complete Self-Evaluation or Transition Plan**

The Plaintiffs' First through Fourth Consolidated Requests ask the City to admit that as of certain dates (in 1981, 1992, and 1993) the City either had not completed a self-evaluation of compliance or a transition plan for compliance with either Title II of the ADA or section 504 of the Rehabilitation Act, respectively. [DE 145-1 at 1–5.]

A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things." Fed. R. Civ. P. 26(b)(1). The relevance standard for discovery is broad. *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) for proposition that relevance in discovery is construed to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."). However, a "district court exercises significant discretion in ruling on a motion to compel" and "may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). The scope of any requests for admission must be within the scope of the discovery allowed under Rule 26(b)(1). Fed. R. Civ. P. 36(a)(1).

Initially, the Court notes that discovery on whether the City complied with the ADA or Rehabilitation Act in decades past has been available to Plaintiffs since the beginning of this lawsuit. Accordingly, any such discovery should have been conducted before discovery originally closed in December 2010. *See, e.g., Ty, Inc. v. Publications Int'l, Ltd.*, No. 99 C 5565, 2003 WL 21294667, at *6 (N.D. Ill. June 4, 2003) ("Where a party can offer no reasonable explanation for its failure to take discovery, a request to reopen discovery should be denied"); Fed. R. Civ. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or

extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"). When the Court inquired at the June status conference of any topics on which the parties needed additional discovery, the Plaintiffs did not identify the need to conduct discovery on the City's compliance with the ADA or Rehabilitation Act in the 1980s and 1990s. Had Plaintiffs raised that issue, the Court would have inquired of the need for such discovery and, absent a reasonable explanation for why such discovery had not already been conducted, would not have allowed additional discovery on such topics. Accordingly, the topics contained in these requests for admission are outside the scope of the limited discovery granted by the Court and the Court will neither order the City to supplement its answers nor deem admitted the requests for admission.

Additionally, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C). While Plaintiffs say that there is relevance to the requests for admission, the substantial burden on the City to answer the requests outweighs any potential relevance. At the September status conference, the City made clear that any self-evaluations or transition plans would not address the removal of snow surrounding the South Bend Courthouse, especially if the City had not received notice of a problem. [DE 152 at 6:9–23.] Additionally, the City doubted that any records of such a self-evaluation or transition plan would exist, due to the retention schedule for public agencies, which allows records to be discarded after eight years. *Id.* at 5:21–6:7. Given

10

the substantial expense and likely fruitless result of any search for decades-old self-evaluations or transition plans, the Court finds that the burden of answering the requests for admission outweighs their likely benefit to Plaintiffs.

Finally, to the extent that Plaintiffs argue that discovery of this information is likely to lead to other, discoverable information, the Court rejects that argument. Discovery in this case closed on September 3, 2013. The requests at issue here were served on the City approximately one month before the close of discovery and the motions to compel were filed after the close of discovery. Under those circumstances, Plaintiffs could not have credibly expected to have other opportunities for discovery based on the contents of the responses, especially given the availability of such discovery since the original Rule 26 conference in this lawsuit.

For each of those reasons, the Court denies the request to deem admitted the First through Fourth Consolidated Requests to the City.

**B. Requests to Produce Documents Related to Self-Evaluations and Transition Plans**

The Fifth and Sixth Consolidated Requests request that the City produce any self-evaluation or transition plan completed since 1977, identify any consultants or contractors used to create any such plan, produce any documents created by consultants or contractors, and produce written communication with the federal government regarding such plan. [DE 145-1 at 5–7.]

The Fifth and Sixth Requests suffer from many of the same issues as the first four requests. This information was discoverable early in the litigation, Plaintiffs did not identify these as a topic on which they needed further discovery, and the information discovered could not lead to additional relevant evidence given the closure of discovery. There is, however, one exception to this general analysis: counsel for Plaintiffs did identify a need to conduct additional

discovery on one specific and recent ADA transition plan, adopted by the City. [DE 143 at 4:14–8:5.] Specifically, Plaintiffs identified a transition plan regarding the public right-of way in South Bend which was adopted by the City in January 2013. *Id.* Discovery into such a plan is proper under the terms of the reopened limited discovery, was not previously available to the Plaintiffs, and is potentially relevant to the issues in this litigation.

While these discovery requests were proper, it remains to be considered whether the City's responses to the discovery requests were adequate. The Fifth Consolidated Request contains two sub-parts; the Sixth Consolidated Request contains four sub-parts. Each is addressed below.

Part (a) of the Fifth Consolidated Request asks the City to produce any self-evaluation or transition plan completed since 1977. In its response, the City identified the existence of the recent transition plan, adopted in January 2013, by citing to the City's website where the transition plan could be found. [DE 145-1 at 5.] The City also attached a copy of the website to its response. *Id.* at 9–10. The cited website contains a link to the twenty-five page transition plan, titled "Americans with Disabilities Act Transition Plan: Pedestrian Facilities in the Public Right-of-Way," which the Court found at http://southbendin.gov/sites/default/files/files/ Legal_ADA2013Transition.pdf. Accordingly, the City has fully answered the compellable portion of that request.

Part (b) of the Fifth Consolidated Request asks the City to identify the title of the document, the date of the document, "the names of any persons contacted by the city to obtain public participation so that the city could receive community and public user input in development the document," and "the dates of publication in newspapers or other media seeking obtain [sic] public participation so that the city could receive community and public user input in

developing the document." [DE 145-1 at 5–6.]  The City did not explicitly answer part (b) of the request, but referred to its response to part (a), which had provided the location of the plan on the City website.  The plan itself provides certain of the requested information, including its name, date of adoption, and the dates of publication in the South Bend Tribune.  To the extent that any additional responsive information exists (other than the information contained within the plan), the City is ordered to supplement its response to part (b) of the Fifth Consolidated Request.

Parts (a) and (b) of the Sixth Consolidated Request ask the City to produce any documents regarding the retention of any consultants or contractors related to the development of any self-evaluation or transition plans.  The City answered each of these subparts, stating that it had not retained any consultants or contractors in such matters.  Accordingly, the City has fully answered those portions of the request.

Part (c) of the Sixth Consolidated Request asks the City to produce any written communication from any agency of the United States government pertaining to a self-evaluation or transition plan, as well as any response from the City.  The City did not answer the request, other than to assert its general objection.  As decided above, any discovery regarding the most recent transition plan is proper.  Accordingly, to the extent there exists any written communication with the federal government regarding this transition plan, the City is ordered to supplement its response to part (c) of the Sixth Consolidated Request.  In so doing, the City shall also identify the date and author of the document, in accordance with part (d) of the Sixth Consolidated Request.

**C.  Requests to Produce Documents Related to Appointment of ADA Coordinator**

The Seventh Consolidated Request seeks information regarding the appointment of Ms. DeRose as ADA Coordinator for the City.  At the June status conference, Plaintiffs specifically

identified her appointment to that position as one of the issues on which they needed further discovery. [DE 143 at 3:25–4:7.]

There are three parts to the Seventh Consolidated Request, two of which the City answered. Part (a) requests the production of the document by which Ms. DeRose was appointed to the position. The City answered that request with directions to its website. The website does contain the document by which Ms. DeRose was appointed, titled "Common Council Resolution 4130-11," which the court located at http://docs.southbendin.gov/WebLink8/ DocView.aspx?id=23607&page=1&dbid=0. Part (b) requests the production of the job description for the position of ADA coordinator. The City answered by stating that no specific job description exists for that position. Accordingly, the City has fully answered those portions of the request.

Part (c) of the Seventh Consolidated Request requests that the City "[p]roduce any document in which the city reported to a federal agency, including the United States Department of Justice, that the city had appointed Ms. DeRose to the position of ADA coordinator." [DE 145-1 at 7.] In answering part (c), the City again pointed to its website. The Court cannot locate any responsive documents to the request on that website. Accordingly, the City is ordered to supplement its answer and produce documents, if any exist, that are responsive to part (c).

## D. Conclusion

As outlined above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion to Compel Discovery Propounded to Defendant City of South Bend and to Deem Admitted Requests for Admissions. The City shall supplement its answer to part (b) of the Fifth Consolidated Request, part (c) of the Sixth Consolidated Request, and part (c) of the Seventh Consolidated Request and produce responsive documents, if they exist, by **December 9, 2013**.

Plaintiffs' request for expenses and attorney's fees related to bringing the motion to compel against the City is **DENIED**. The Court finds that it is reasonable to apportion the expenses for the motion by allowing the expenses to be borne by the parties as expended in making and responding to the motion. Fed. R. Civ. P. 37(a)(5)(C).

### IV. Motion to Compel Against the County

Plaintiffs also filed discovery requests on the County after discovery was reopened following the June status conference. Against the County, Plaintiffs also seek to compel answers to some of the requests, deem as admitted some of the requests for admission, and for an award of attorney's fees.

As with the City, Plaintiffs' requests to the County can be divided into three categories: (1) requests to admit that certain components of the South Bend Mishawaka Courthouses were not readily accessible to and usable by individuals with disabilities (First through Twelfth Consolidated Requests); (2) requests to admit that—as of certain dates in the 1980s and 1990s—the city had not completed a self-evaluation or transition plan under the ADA or Rehabilitation Act (Thirteenth through Sixteenth Consolidated Requests); and (3) requests to produce information related to any self-evaluation or transition plan under the ADA or Rehabilitation Act (Seventeenth and Eighteenth Consolidated Requests).

In its response to the discovery requests and requests for admission, the County answered approximately one third of the requests. The County objected to the other requests, providing an individualized objection to each request and, in the alternative, denying the requests for admission. [*See* DE 148-1.]

The County did not file a written response to Plaintiffs' motion to compel, but responded orally at the September status conference. The County noted that it lodged objections and

15

responses in spite of the objections, rested on those objections and responses, and asked—if the Court believed the answers were insufficient—to allow the answers to be supplemented rather than deemed admitted. [DE 152 12:2–21.] Plaintiffs additionally filed a brief of supplemental authorities in support of their motion to compel [DE 154], to which the County responded [DE 155] and Plaintiffs filed a reply in support [DE 156].

Each category of requests to the County is addressed below.

## A. Requests to Admit that Portions of Courthouses are not Accessible

In its First through Twelfth Consolidated Requests, Plaintiffs ask the County to admit that certain portions of the South Bend and Mishawaka Courthouses were "not readily accessible to and usable by individuals with disabilities, including wheelchair users" as of July 1, 2013. Specifically the requests to admit relate to the following portions of the courthouses: (1) the elevator in the South Bend Courthouse; (2) the witness stands in the South Bend Courthouse;[7] (3) the jury boxes in the South Bend Courthouse; (4) the jury deliberation rooms in the South Bend Courthouse; (5) the angles of ingress and egress in the tunnel in the South Bend Courthouse; (6) the counter used by the clerks in the South Bend Courthouse; (7) the south public entrance to the Mishawaka Courthouse; (8) the jury boxes in the Mishawaka Courthouse; (9) the witness stands in the Mishawaka Courthouse; (10) the seating arrangements for spectators in the Mishawaka Courthouse; and (11) the restroom facilities at the Mishawaka Courthouse.

Two of the requests for admission—regarding the elevator at the South Bend Courthouse and the ingress and egress in the tunnel in the South Bend Courthouse—were flatly denied by the County. Plaintiffs do not appear to be challenging the sufficiency of those denials and, accordingly, any request to deem admitted those requests for admission is denied.

---

[7] Two identical requests for admission—the Second and Fifth Consolidated Requests—seek an admission regarding the witness stands in the South Bend Courthouse.

The other requests for admission were objected to by the County on the grounds that none of the Plaintiffs have standing to challenge the accessibility of those portions of the courthouses, since none of the Plaintiffs have alleged that they are currently likely to require the use of such portions of the courthouse. In the alternative, the County denied each request "to the extent this request requires a response," explaining that courtroom staff are available to assist disabled persons and trial judges have the ability to move an entire trial (even one scheduled to be heard at the Mishawaka Courthouse) to one of the ADA-compliant courtrooms. [*See, e.g.,* DE 148-1 at 3.]

The Court need not—at this time—consider each individual component of the South Bend and Mishawaka Courthouses to determine whether Plaintiffs have standing to challenge their accessibility. As with the self-evaluations and transition plans discussed above, Plaintiffs did not identify the accessibility of individual courthouse components as a topic on which they required further discovery.[8] The accessibility of the courthouses has been the subject of much discovery already in this case. Had Plaintiffs identified it as a topic of intended further discovery, the Court would have sought reasonable explanation of that claimed need. Because it was not identified as a topic for potential discovery, it was not within the scope of the limited discovery allowed by the Court.

Plaintiffs have had several opportunities to seek discovery regarding the accessibility of the courthouses. To the extent the circumstances have changed, the County is under an obligation to supplement or correct its previous responses. Fed. R. Civ. P. 26(e)(1). However, if Plaintiffs failed to seek discovery when they could have in 2010 or 2012, they did not have leave to do so here.

---

[8] Plaintiffs did mention developments as to the restroom in the South Bend Courthouse at the June status conference. [DE 143 at 3:18–24.] They appear not to have propounded any requests on the County regarding that restroom.

17

Additionally, even if Plaintiffs could have propounded the First through Twelfth Consolidated Requests on the County, the Court would determine the County's responses to the requests are sufficient. The County provided an individualized objection to each request (except the duplicative one), noted that alternatives are available and that courtroom staff are available to assist disabled persons, and denied the requests for admission. Plaintiffs may not agree with the denial, but that disagreement is not a sufficient basis to deem the requests admitted.

For those reasons, the Court denies the request to deem admitted the First through Twelfth Consolidated Requests to the County.

**B. Requests to Admit Failure to Complete Self-Evaluation or Transition Plan**

As it does towards the City, the Plaintiffs ask the County to admit that as of certain dates (in 1981, 1992, and 1993) the County either had not completed a self-evaluation of compliance or a transition plan for compliance with either Title II of the ADA or section 504 of the Rehabilitation Act, respectively. [DE 148-1 at 12–16.]

The Court applies the same rationale to those requests directed to the County as it did to those requests directed towards the City. Plaintiffs did not identify this topic as one on which it needed to conduct additional discovery. Indeed, the County's objections indicate that such requests had been made of the County earlier in this litigation. If Plaintiffs deemed those earlier answers insufficient, the time to compel answers would have been during the two earlier periods of discovery. As with the requests to the City, the probative value of these requests is outweighed by the substantial burden of requiring the County to look at four decades of records in order to answer the requests for admission. And, as before, this discovery is not likely to lead to other, discoverable information, due to the timing of the requests and motion to compel after discovery has finally closed.

For each of those reasons, the Court denies the request to deem admitted the Thirteenth through Sixteenth Consolidated Requests to the County.

**C. Requests to Produce Documents Related to Self-Evaluations and Transition Plans**

The Seventeenth and Eighteenth Consolidated Requests request that the County produce any self-evaluation or transition plan completed since 1977, identify any consultants or contractors used to create any such plan, produce any documents created by consultants or contractors, and produce written communication with the federal government regarding such plan. [DE 145-1 at 5–7.]

As with the requests above, this information was discoverable early in the litigation, the Plaintiffs did not identify these as topics on which they needed further discovery, and the information discovered could not lead to additional relevant evidence given the closure of discovery. Unlike the City, Plaintiffs did not identify any newly released ADA transition plan authored by the County on which it needed discovery. Accordingly, the Court denies the motion to compel the Seventeenth and Eighteenth Consolidated Requests to the County.

**D. Conclusion**

As outlined above, the Court **DENIES** Plaintiffs' Motion to Compel Discovery Propounded to Defendant St. Joseph County Board of Commissioners and St. Joseph Superior Court and to Deem Admitted Requests for Admissions. As Plaintiffs were not successful in their motion to compel, their request for expenses and attorney's fees related to bringing the motion to compel against the County is **DENIED**.

**V. Conclusion**

Based on the foregoing, Plaintiffs' Motion to Take Judicial Notice of County Website is **DENIED** without prejudice; Plaintiffs' Motion to Compel Discovery Propounded to Defendant

19

City of South Bend and to Deem Admitted Requests for Admission is **GRANTED IN PART** and **DENIED IN PART**; and Plaintiffs' Motion to Compel Discovery Propounded to Defendants St. Joseph County Board of Commissioners and St. Joseph County Superior Court and to Deem Admitted Requests for Admissions is **DENIED**.  The City shall supplement its answer to part (b) of the Fifth Consolidated Request, part (c) of the Sixth Consolidated Request, and part (c) of the Seventh Consolidated Request and produce responsive documents, if they exist, by **December 9, 2013**.

Additionally, both the City and the County have indicated a desire to file dispositive motions following the Court's ruling on the Plaintiffs' discovery motions.  [DE 152 at 3:12–22, 14:8–16:18.]  The City has one currently pending motion to dismiss.  [DE 135.]  In light of the City's desire to amend its dispositive motion, the pending motion to dismiss [DE 135] is **DISMISSED AS MOOT** without prejudice.  All dispositive motions, if the parties choose to file them, shall be filed by **December 19, 2013**.  Any dispositive motions shall brief in accordance with Local Rule 56-1.

SO ORDERED.

ENTERED:  November 19, 2013

    /s/ JON E. DEGUILIO
Judge
United States District Court