| | | |
|---|---|---|
| STEPHEN HUMMEL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:10-CV-003 JD |
| | ) | |
| ST. JOSEPH COUNTY BOARD OF | ) | |
| COMMSSIONERS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This is a case challenging the accessibility of the St. Joseph County Courthouse (the "South Bend Courthouse") and the Mishawaka County Services Building (the "Mishawaka Courthouse"), both located in St. Joseph County, Indiana. The majority of the plaintiffs are disabled citizens of the county who have (or at some earlier point in this litigation had) cases pending before the St. Joseph County Superior Court.

Now before the Court are three cross-motions for summary judgment: one filed by the City of South Bend (the "City") [DE 158], one filed by the St. Joseph County Board of Commissioners and the St. Joseph County Superior Court (collectively, the "County") [DE 160], and one filed by the plaintiffs [DE 166]. The motions filed by the City and the County ask for the plaintiffs' claims to be dismissed for lack of standing or for summary judgment to be entered against the plaintiffs. The motion filed by the plaintiffs seeks partial summary judgment and asks for a declaratory judgment and a permanent injunction on two issues related to this case. Also pending is a motion filed by the County, which seeks to strike the plaintiffs' cross-motion as untimely. [DE 172.] All of the motions are fully briefed and ripe for decision.

For the reasons stated below, the County's Motion to Strike Plaintiffs' Cross-Motion for Partial Summary Judgment is **DENIED** [DE 172], the City's Motion for Summary Judgment as to Plaintiffs' Supplemental Complaint is **GRANTED** [DE 158], the County's Motion for Summary Judgment is **GRANTED** [DE 160], and the plaintiffs' Cross-Motion for Partial Summary Judgment is **DENIED** [DE 166].

## I. Background

This is an old case, which has had many developments over the course of its litigation. The case originated with four plaintiffs, but additional plaintiffs have been added, both in plaintiffs' Second Amended Complaint [DE 73] and their Supplemental Complaint [DE 79]. Some of the claims of some of the plaintiffs have already been dismissed, although that has occurred in piecemeal fashion over the course of the litigation. Accordingly, some background as to the many plaintiffs and their remaining claims is helpful in framing the issues raised by the cross-motions for summary judgment. The plaintiffs and the current status of their claims are summarized here:

| Plaintiff | Courthouse | Status |
|---|---|---|
| Victoria Means | 1855[1] | Ms. Means was one of the original plaintiffs. She was sued in the Small Claims Division of the St. Joseph Superior Court and the lawsuit ended in January 2012. Her claims against the County for injunctive relief and monetary damages were dismissed in 2011. [DE 55.] Her claim for monetary damages against the City was dismissed in 2011. [DE 56.] Her claim for injunctive relief against the City was dismissed in 2012. [DE 126.] She has no remaining claims in this litigation. Additionally, plaintiffs' counsel filed notice that Ms. Means passed away on March 20, 2014. [DE 179.] |

---

[1] In addition to the South Bend Courthouse and the Mishawaka Courthouse, some cases within the St. Joseph County Superior Court system are heard in the 1855 Courthouse. The 1855 Courthouse is adjacent to (and reachable via underground tunnel from) the South Bend Courthouse. Plaintiffs do not challenge the accessibility of the 1855 Courthouse.

| Plaintiff | Courthouse | Status |
|---|---|---|
| Tonia Matney | 1855 | Ms. Matney was one of the original plaintiffs. She was sued in the Small Claims Division of the St. Joseph Superior Court and the lawsuit ended in January 2012. Her claims against the County for injunctive relief and monetary damages were dismissed in 2011. [DE 55.] Her claim for monetary damages against the City was dismissed in 2011. [DE 56.] Her claim for injunctive relief against the City was dismissed in 2012. [DE 126.] She has no remaining claims in this litigation. |
| Stephen Hummel | South Bend | Mr. Hummel was one of the original plaintiffs. He and his late wife had a case in the St. Joseph Superior Court, which ended in January 2010. His claim against the County for injunctive relief was dismissed in 2011. [DE 55.] His claims against the City for injunctive relief and monetary damages were dismissed in 2011. [DE 56.] His only remaining claim in this litigation is a claim against the County for monetary damages. |
| Margaret Hummel | South Bend | Ms. Hummel is the late wife of Stephen Hummel. She was named a plaintiff in the original complaint, but passed away a short time later. She was not named as a plaintiff in the First Amended Complaint [DE 27] and was termed from the case. |
| Crystal Wright | South Bend | Ms. Wright was added in plaintiffs' Second Amended Complaint. She has a case in the St. Joseph Superior Court, which is currently pending. She has pending claims in this litigation against the County and the City, both for injunctive relief and monetary damages. |
| Karen Brandy-Comer | South Bend | Ms. Brandy-Comer was added in plaintiffs' Second Amended Complaint. She has a case in the St. Joseph Superior Court, which is currently pending. She has pending claims in this litigation against the County and the City, both for injunctive relief and monetary damages. |

| Plaintiff | Courthouse | Status |
|---|---|---|
| Shawna Canarecci | 1855[2] | Ms. Canarecci was added in plaintiffs' Second Amended Complaint.  She is not disabled, but sued due to her association with plaintiffs' counsel, Kent Hull, who is a disabled attorney.  Ms. Canarecci was not named in plaintiffs' Supplemental Complaint, but was never formally dismissed from the case.  She remains an active plaintiff on the case docket and appears to have pending claims in this litigation against the County and the City, both for injunctive relief and monetary damages. |
| Michael Ramos | Mishawaka | Mr. Ramos was added in plaintiffs' Supplemental Complaint.  He had a case in the St. Joseph County Superior Court, which was dismissed without prejudice in February 2014.  He has pending claims in this litigation against the County and the City, both for injunctive relief and monetary damages. |
| Erica Bishop | South Bend | Ms. Bishop was added in plaintiffs' Supplemental Complaint.  She is not disabled, but sued due to her association with plaintiffs' counsel, Kent Hull, who is a disabled attorney.  Her case had settled at some time before June 2013.  During a June 2013 status conference, plaintiffs' counsel stated that he had no objection to the dismissal of Ms. Bishop's claims.  [DE 143.]  However, her claims have not been formally dismissed. |

With that background, the Court turns to the pending motions, beginning with the County's motion to strike.

## II.  Motion to Strike Plaintiffs' Cross-Motion for Partial Summary Judgment

The County argues that the plaintiffs' Cross-Motion for Partial Summary Judgment is untimely, because the Court previously ordered that "[a]ll dispositive motions, if the parties choose to file them, shall be filed by December 19, 2013."  [DE 173 at 1 (citing DE 157 at 20).]  The plaintiffs' cross-motion was not filed until February 19, 2014, which was two months after the dispositive motion deadline.  The plaintiffs argue that the cross-motion was filed within the

---

[2] The location at which Ms. Canarecci's case was heard is not clear from the Complaint or the state court docket. Based on the cause number, 71D01-1005-SC-005032, the Court believes that her case was heard before Magistrate Judge Steinke, who sits in the 1855 Courthouse.  However, determining the exact location of Ms. Canarecci's suit is not necessary to addressing her claims, to the extent they remain pending.

time to submit their brief opposing the County's Motion for Summary Judgment and so the Court has the discretion to permit the cross-motion.

In support of its motion, the County cites a previous case from this district, with similar factual circumstances. *Wyatt v. Michelin N. Am., Inc.*, No. 1:02-cv-234, 2003 WL 21918710 (N.D. Ind. July 16, 2013). In that case, a *pro se* plaintiff combined, with her response to a motion for summary judgment, her own cross-motion for summary judgment; both were filed on the date that her response to the defendant's motion for summary judgment was due, but four weeks after the dispositive motion deadline. *Id.* at *1. Magistrate Judge Cobsey struck the cross-motion as untimely, but considered the arguments raised in the combined filing in opposition to the defendant's motion for summary judgment. *Id.* at *1 n.1. The County also cites cases from other districts doing the same. *Jones v. Palombo*, No. 1:07-cv-1788, 2010 WL 235070, at *1 (E.D. Cal. Jan. 21, 2010); *Risher v. Unum Life Ins. Co.*, No. Civ. A CV204-130, 2005 WL 1983769, at *2 (S.D. Ga. Aug. 16, 2005); *Tyler v. City of Manhattan*, 849 F. Supp. 1429, 1434 (D. Kan. 1994).

The plaintiffs argue that their cross-motion was timely because it was filed within the time allotted for a response to the County's Motion for Summary Judgment. [DE 175 at 3 (citing *In re CVEO Corp.*, 327 B.R. 210, 213 (Bankr. D. Del. 2005) ("A party may include a cross motion for summary judgment in a response.")).] Plaintiffs also argue, in the alternative, that even if the cross-motion was untimely, the Court has discretion to permit the cross-motion and consider it on its merits. Finally, the plaintiffs argue that one of the issues on which they sought summary judgment was not apparent until the County filed its motion for summary judgment, along with the corresponding affidavit of Chief Judge Manier.

The Court **DENIES** the County's Motion to Strike.  Even if the cross-motion was not timely filed, the Court does not believe that the County has suffered any prejudice arising from the cross-motion.  Additionally, the Court prefers to address the claims on their merits, rather than on any technical default.  Accordingly, the Court will consider the plaintiffs' cross-motion.

### III.  Cross-Motions for Summary Judgment

With that preliminary issue aside, the Court turns to the cross-motions for summary judgment.

### A.    Standard of Review

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3]  That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor.  *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 503–04 (7th Cir. 2014).  A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" exists with respect to any such material fact, and summary judgment is therefore inappropriate, when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  On the other hand, where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  *Matsushita Elec. Indus. Co. v.*

---

[3] The plaintiffs challenge—with respect to both the City's motion and the County's motion—that the defendants have not done enough to show the absence of a genuine dispute as to a material fact.  Plaintiffs argue that the defendant must "demonstrate that there is an absence of evidence to support the nonmoving party's case."  [DE 168 at 2.]  However, in a case where the moving party does not bear the burden of persuasion at trial, the party "may move for summary judgment by 'showing'—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013).  That is exactly what both the City and the County have done in the pending motions.  "Upon such a showing, the nonmovant must then make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 1168 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) (internal quotation marks omitted).

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  However, the non-moving party cannot simply rest on the allegations or denials contained in its pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

Finally, the fact that the parties have cross-filed for summary judgment does not change the standard of review.  *M.O. v. Ind. Dep't of Educ.*, 635 F. Supp. 2d 847, 850 (N.D. Ind. 2009).  Cross-motions are treated separately under the standards applicable to each.  *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 n.4 (7th Cir. 2008).

**B.** **City's Motion for Summary Judgment**

The City has no responsibilities related to the accessibility of the interior of either of the Courthouses at issue in this case.  Additionally, the City has no relationship to the area surrounding the Mishawaka Courthouse, since that building is located within the city of Mishawaka.  The City does, however, have some authority and responsibility over the areas surrounding the South Bend Courthouse.

The plaintiffs' claims against the City are essentially two-fold.  First, plaintiffs allege insufficient accessible parking near the South Bend Courthouse.[4]  Second, plaintiffs challenge the snow and ice removal practices of the City with respect to the areas surrounding the South Bend Courthouse, arguing that the snow and ice removal practices present barriers to entry for disabled litigants.

---

[4] That claim was disposed of with respect to Ms. Means, Ms. Matney, and Mr. Hummel on the City's previous motion for summary judgment.  [DE 56.]  However, plaintiffs restated the same allegations in their Second Amended and Supplemental Complaints.  For the same reasons as stated earlier, none of the remaining plaintiffs have a cognizable claim to challenge the accessible parking near the South Bend Courthouse, to the extent they attempt to bring such a claim.

Three of the plaintiffs' claims against the City may be quickly addressed. First, plaintiff Erica Bishop is no longer pursuing this lawsuit; although she has not been formally dismissed as a plaintiff, she offers no evidence in support of her claim and does nothing to dispute the City's motion for summary judgment. Plaintiffs' counsel previously stated he had no objection to Ms. Bishop's claims being dismissed. Additionally, the Court has already held that Title II of the ADA does not provide for the sort of associational standing asserted by Ms. Bishop. Accordingly, Ms. Bishop's claims will be **DISMISSED WITHOUT PREJUDICE** for lack of standing.

Second, plaintiff Michael Ramos's case was being heard at the Mishawaka Courthouse, which is not located within the city of South Bend and to which the City has no relationship or duty. The plaintiffs did not respond to this argument or in any way attempt to support Mr. Ramos's claims against the City. Therefore, his claims will also be **DISMISSED WITHOUT PREJUDICE** for lack of standing.

Third, while the City's motion only addresses those plaintiffs named in the Supplemental Complaint, to the extent that Ms. Canarecci remains an active plaintiff in this litigation she suffers from the same associational standing issues as does Ms. Bishop. Therefore, her claims will be **DISMISSED WITHOUT PREJUDICE** for lack of standing.

The City argues that it is entitled to summary judgment on the claims of plaintiffs Crystal Wright and Karen Brandy-Comer, as well. With respect to these plaintiffs, the City argues that they (1) have never experienced any actual difficulty in entering the South Bend Courthouse due to snow or ice removal and (2) lack standing to seek prospective relief. The City summarizes their claim for prospective relief as a "generalized fear that: 1) some case or proceeding of theirs will be scheduled in the future for trial or for substantive hearing, on a day of inclement weather;

and 2) that on such future day, South Bend will not have removed snow and ice from the sidewalks or roads to allow adequate mobility and access to the court for them as persons with disabilities." [DE 159 at 6.] The City argues that such a fear is neither imminent nor likely and thus cannot provide any basis for prospective relief. The City also argues, in the alternative, that their claims fail to state a cognizable claim under the ADA.

The plaintiffs did not respond to the argument that neither Ms. Brandy-Comer nor Ms. Wright has "been impeded from parking near the St. Joseph County Courthouse due to ice or snow" [DE 159 at 3] and thus has not experienced any injury resulting from the City's snow removal practices. "Standing exists when the plaintiff suffers an actual or impending injury, no matter how small." *Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir. 2010) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Here, plaintiffs have not offered any evidence of any past injury. Accordingly, their claims against the City for past damages are **DISMISSED WITHOUT PREJUDICE** for lack of standing.

With respect to the claims for prospective relief, the plaintiffs responded only in support of the claim of Ms. Wright. Therefore, in light of plaintiffs' apparent concession, the claim of Ms. Brandy-Comer is **DISMISSED WITHOUT PREJUDICE** for lack of standing.[5] As to Ms. Wright's claim, the plaintiffs argued that there is a possibility that Ms. Wright will have a future court date during inclement weather. Specifically, plaintiffs argue that they "cannot speculate about future court dates or the weather conditions on those dates, but, as the nonmovant, this Court must draw reasonable inferences in [Ms. Wright's] favor. There may be court proceedings on winter days similar to the one Hull experienced [and described in his affidavit], and the city's

---

[5] Although the plaintiffs makes no effort to defend Ms. Brandy-Comer's claim, the Court does take judicial notice of the docket in her pending case, as described below in footnote 13. The Court notes that Ms. Brandy-Comer's case sat dormant for over three years and only recently began discovery. Additionally, there is no evidence that Ms. Brandy-Comer has ever driven to the Courthouse or been affected by the City's snow removal efforts. For the same reasons as discussed below with respect to Ms. Wright, to the extent Ms. Brandy-Comer still intends to litigate her claims against the City, her risk of future injury is too speculative to support standing.

response to that weather may be as it was described in the affidavit." [DE 169 at 7 (citation omitted).] Plaintiffs also attached an order from Ms. Wright's case, showing that her case was still pending and that a hearing on a motion for summary judgment was then-scheduled for June 4, 2014.[6]

Here, Ms. Wright alleges that the City violates Title II of the ADA in its snow and ice removal practices. Title II requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To succeed on the merits of a claim under Title II, a plaintiff must establish "(1) that [she] has a qualifying disability; (2) that [she] is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of [her] disability." *Frame v. City of Arlington*, 575 F.3d 432, 435 (5th Cir. 2009); *Culvahouse v. City of LaPorte*, 679 F. Supp. 2d 931, 937 (N.D. Ind. 2009). Discrimination, under both the ADA and the Rehabilitation Act, "may be established by evidence that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999).

However, in order for the Court to have the jurisdiction over this claim, Ms. Wright must have standing to bring it. *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013)

---

[6] The Court has reviewed and takes judicial notice of the dockets of Ms. Wright's pending cases, which appear to have been consolidated under the cause number 71D07-1201-PL-000001. The hearing on the motion for summary judgment was held on June 4, 2014. On August 12, 2014, the Superior Court ruled on the motion for summary judgment, granting it in part. Most of Ms. Wright's claims were dismissed, but two claims survived summary judgment: her claim to invalidate the late fee provisions of her lease and her claim for damages arising from a breach of the express warrant of habitability arising from the alleged existence of mold in her apartment. As of the date of this opinion, a pretrial conference is scheduled for October 16, 2014.

(addressing claim under Title III of the ADA; "Standing to bring and maintain a suit is an essential component of this case-or-controversy requirement."). In order to establish standing, a plaintiff must show: "(1) injury in fact, which must be concrete and particularized, and actual and imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) redressability." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). At least in the context of Title III of the ADA, the Seventh Circuit has stated that to support a claim for prospective relief, "a plaintiff must allege past injury under the ADA; show that it is reasonable to infer from her complaint that this discriminatory treatment will continue; and show that it is also reasonable to infer, based on the past frequency of her visits and the proximity of [the public accommodation] to her home, that she intends to return to [the public accommodation] in the future." *Id.* (brackets in original; internal quotations omitted) (quoting *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008)).

As noted above, there is no evidence in the record that Ms. Wright has ever experienced any past injury due to the City's snow removal efforts. For instance, there is nothing in the record to suggest that Ms. Wright has ever attempted to visit the South Bend Courthouse on a day of inclement weather. There is no evidence of how she travels to the Courthouse, if and when she does go there. There is no evidence regarding whether she drives a car. If she does drive, there is no evidence of whether she has a disability parking placard or license plate, entitling her to park in the handicapped-accessible spots the plaintiffs challenge are impacted by the City's snow removal efforts. Finally, the plaintiffs do nothing to dispute what the City claims is a material fact not in dispute: that Ms. Wright "has never been impeded from parking near the St. Joseph County Courthouse due to ice or snow." [DE 159 at 3.]

Additionally, despite Ms. Wright's dependence on her continuing case for standing, the undisputed evidence is that she rarely attends hearings in her case. Her interrogatory answers, attached by the City to its motion for summary judgment, state that she has not attended any court proceedings since December 7, 2011.[7] [DE 159 at 19 ("My lawyer has attended for me.").] Notably, although Ms. Wright relied on the existence of the June 4 hearing in her response to the City's Motion, she does not appear to have attended that hearing.[8] [Order on Motion for Summary Judgment Filed by Housing Authority of South Bend an Cross-Motion for Summary Judgment Filed by Crystal Wright, Cause No. 71D07-1201-PL-000001, at 1 (filed Aug. 12, 2014) ("Plaintiff, Crystal Wright, appeared by her counsel of record, Kent Hull.").]

Here, despite the lack of any evidence that she has ever driven to the Courthouse, parked in a handicapped-accessible parking spot, or gone to the Courthouse on a day of inclement weather, Ms. Wright asks the Court to infer that she may attend a court proceeding on a day of inclement weather in the future and that she may suffer injury from the City's snow removal practices on such a day. [DE 169 at 7.] "Although [a non-movant on summary judgment] is entitled to the benefit of reasonable inferences, that does not extend to inferences that are supported only by speculation or conjecture." *Matthews v. Waukesha Cnty.*, 759 F.3d 821, 824 (7th Cir. 2014) (citing *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010)). In order to benefit from an inference that some future hearing on some future day with inclement weather would impact Ms. Wright, the Court believes there must be some evidence that she at least somewhat regularly attends hearings in her case. *See, e.g., Shotz v. Cates*, 256 F.3d 1077, 1082 (11th Cir. 2001) ("Since their July 1999 visit to the Levy County Courthouse, the plaintiffs have

---

[7] She does state that she attended hearings in the 1855 Courthouse, but that the case has since been transferred to the plenary docket of the Superior Court. [DE 159 at 20.] The Court takes judicial notice that the case was transferred to the plenary docket on January 9, 2012. However, by virtue of her interrogatory answers, the Court knows that she did not attend any hearing in at least the month prior to the case's transfer.

[8] The state court opinion reflects that Ms. Wright did provide testimony in the form of deposition excerpts.

not attempted to return, nor have they alleged that they intend to do so in the future."); *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985) (holding that the "mere possibility" that a plaintiff will again be called for jury duty is insufficient to establish standing). The plaintiffs have not attempted to provide any such evidence; rather, the only evidence in the record indicates she has not attended a hearing in over two-and-a-half years.

There is further uncertainty that she would attend a hearing on a day of significant inclement weather. Certainly South Bend does occasionally experience inclement weather during the winter months. But given the uncertainty of when inclement weather might occur, it would be the height of speculation to conclude that Ms. Wright would choose to attend a hearing on such a day. The Court believes that these multiple layers of uncertainty make the likelihood of injury too remote to satisfy the requirement that Ms. Wright's injury be "concrete and particularized, and actual and imminent." *Sherr*, 703 F.3d at 1073.

Finally, the Court addresses the Plaintiffs' arguments that Ms. Wright's standing is supported by the reasoning in *Brooklyn Center for Independence of the Disabled v. Bloomberg*, 290 F.R.D. 409, 414–15 (S.D.N.Y. 2012) ("*Brooklyn C.I.D.*").[9] That case involved a challenge by disabled citizens of New York City to the city's emergency preparedness plans, including whether the plans adequately addressed the needs of disabled citizens. The district court found that the plaintiffs had standing to bring their claims. The court reasoned that the threatened injury was particularly severe, lessening the plaintiffs' burden to show the likelihood of future injury. *Id.* at 415. Additionally, given the uncertain nature and timing of future emergency situations, the court found that "there is no better time" to resolve the issues raised by the parties. *Id.*

---

[9] Plaintiffs cite to the reported decision at 287 F.R.D. 240, but that decision was superseded at the citation above.

The Court does not find *Brooklyn C.I.D.* persuasive in this case. *Brooklyn C.I.D.* was considering whether the plaintiffs had standing at the class certification stage, where "plaintiffs need only properly allege such an injury." *Id.* at 414. In this case, on summary judgment, the plaintiffs cannot simply rest on the allegations contained in their pleadings, but must present sufficient evidence to show that they have suffered or are sufficiently likely to suffer an injury in fact. *Celotex Corp.*, 477 U.S. at 322–23. They have failed to provide any evidence in support of Ms. Wright's standing, other than an order showing there was a June 4 hearing, which she didn't attend.

In conclusion, Ms. Wright has not provided sufficient evidence to show that her threat of future injury is either concrete, particular, actual or imminent. Accordingly, she lacks standing to pursue her claim for prospective relief against the City.

Alternatively, even if the court determined that Ms. Wright had standing, it would still grant summary judgment in favor of the City. The City raises several substantive arguments as to why Ms. Wright's claim is insufficient. [DE 159 at 7–11.] The plaintiffs do not respond to the substance of these arguments. Instead, they say that the standing argument is "curious" in light of the substantive arguments and that "[t]he city does not contend that it argues these inconsistent theories alternatively." [DE 169 at 8.] However, the Court believes that the City is making alternative arguments. This is made clear from the City's argument heading: "*Even If They Have Standing*, Plaintiffs Have No Legal Basis for Prospective Action Against South Bend Under the Americans With Disabilities Act (ADA) or Under Section 504 of the Rehabilitation Act of 1973." [DE 159 at 7 (emphasis added).]

Again, to succeed on the merits of her claim under Title II, Ms. Wright must establish "(1) that [she] has a qualifying disability; (2) that [she] is being denied the benefits of services,

programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of [her] disability." *Frame*, 575 F.3d at 435; *Culvahouse*, 679 F. Supp. 2d at 937. The City does not challenge that Ms. Wright has a "qualifying disability" or that it is a "public entity." Thus, the only question is whether there is sufficient evidence in the record by which a reasonable jury could conclude that Ms. Wright has been or will imminently be denied the benefits of the Court's services or discriminated against by reason of her disability.

Here, the claims suffer the same deficiencies discussed above with respect to standing. Ms. Wright challenges the City's snow removal practices, but offers absolutely no evidence that those practices in anyway impact her or her ability to access the South Bend Courthouse.[10] Without any evidence that Ms. Wright has visited or has imminent plans to visit the Courthouse, and that she would reach the Courthouse by driving there and parking, no reasonable jury could find that she is being denied the benefits of the court's services or being discriminated against by virtue of the City's snow removal practices.

Consistent with the discussion above, the City's motion is **GRANTED**. All pending claims against the City are **DISMISSED WITHOUT PREJUDICE** for lack of standing.

## C.  County's Motion for Summary Judgment

Plaintiffs' claims against the County are several. At both Courthouses, plaintiffs challenge the accessibility of the public restrooms, elevators, water fountains, facilities for jurors (including restrooms, jury boxes, and deliberation rooms), witness stands, speaking podiums for

---

[10] While plaintiffs also complain about the snow removal from the sidewalks near the South Bend Courthouse, the plaintiffs offer no evidence of the City's duty to remove the snow from those sidewalks. In fact, the plaintiffs did not respond to the City's statement of material fact that the City, by virtue of local ordinances, has no obligation to remove snow from those sidewalks. Accordingly, it is undisputed that, because the City is neither the owner nor the occupant of any building abutting or adjacent to the sidewalks at issue, removing snow from those sidewalks is the duty of others. [DE 159 at 12.] While it is possible for the City to take over snow removal when the owner or occupant has failed to do so, plaintiffs have articulated no complaint about such a policy or practice in this case.

addressing the court, clerk counters, and spectator seating.  Additionally, the plaintiffs challenge the accessibility of the ramp/tunnel into the South Bend Courthouse and the parking lot at the Mishawaka Courthouse.  The plaintiffs also challenge the County's failure to provide any services to assist litigants who are blind.  Finally, in the plaintiffs' Supplemental Complaint, they added a claim that the County was expending funds to alter the South Bend Courthouse without making it accessible to disabled persons, in violation of 28 C.F.R. § 35.151(b)(1).

As with the City's motion, a few of the plaintiffs and a few of the claims may be quickly addressed.  For the same reasons as those stated with respect to the City's motion, the claims of Erica Bishop and Shawna Canarecci (to the extent she remains a plaintiff) are **DISMISSED WITHOUT PREJUDICE** for lack of standing.

The Court takes judicial notice that plaintiff Michael Ramos's state court case—cause number 71C01-1311-PL-000212, after its transfer from the small claims division to the Circuit Court docket—was dismissed without prejudice on February 25, 2014.  Accordingly, Mr. Ramos no longer has any standing to seek prospective relief against the County and that claim is **DISMISSED WITHOUT PREJUDICE** for lack of standing.  Because Mr. Ramos was the only plaintiff with any case pending at the Mishawaka Courthouse (or that had ever had a case pending at the Mishawaka Courthouse), no remaining plaintiffs have standing to prospectively challenge any accessibility issues with respect to the Mishawaka Courthouse.

Additionally, the Court previously ruled that those plaintiffs who had no imminent prospect of being asked to serve as jurors do not have standing to challenge the facilities for jurors.  [DE 129 at 14.]  For that same reason, none of the current plaintiffs have standing to challenge those portions of the Courthouses and therefore those allegations cannot form the basis of any claims for past damages or prospective relief.

With respect to the witness stands, spectator seating, podium, and clerk counter, the County argues that there has been no evidence offered that they in any way violate the ADA. Plaintiffs offer no additional evidence in response to the County's motion for summary judgment.[11] Accordingly, those allegations cannot form the basis of any claims for past damages or prospective relief.

With respect to the elevators and drinking fountains, the County notes that no evidence has been offered by plaintiffs that either of those services violate the ADA or are otherwise inaccessible. Plaintiffs offered no additional evidence regarding the drinking fountains and offered two pieces of evidence regarding the elevator at the South Bend Courthouse: that the elevator control panel may not be accessible to individuals who are blind and that the elevator is "very old." [DE 168-1 at 4.] However, none of the plaintiffs in this case are blind and nothing about the age of the elevator is sufficient to establish that it violates the ADA. Additionally, none of the plaintiffs have offered any evidence that they had difficulty accessing or using either elevator. Accordingly, those allegations cannot form the basis of any claims for past damages or prospective relief.

Finally, because none of the plaintiffs are blind, they therefore lack standing to challenge the County's services to blind litigants and that allegation cannot form the basis of any claims for past damages or prospective relief.

After separating out those clearly unsupported allegations, we are left with four plaintiffs—Mr. Hummel (damages only), Mr. Ramos (damages only), Ms. Wright (prospective relief and damages), and Ms. Brandy-Comer (prospective relief and damages)—and two

---

[11] Plaintiffs do cite the Court's prior opinion denying plaintiffs' motion for preliminary injunction and state that the opinion "summarizes testimony giving evidence of barriers to individuals with disabilities." [DE 168-1 at 3–4.] However, Local Rule 56-1(b)(2) requires that the opposing part "identif[y] the material facts that the party contends are genuinely disputed so as to make a trial necessary." Here, Plaintiffs identify no material facts, but instead ask the Court to root through the record to find the evidence that supports their claims. The Court need not and will not do so.

potential barriers to accessibility—the public restrooms at the South Bend Courthouse and the ramp between the County-City Building and the South Bend Courthouse.[12]  With respect to those plaintiffs with ongoing cases, both Ms. Wright's and Ms. Brandy-Comer's cases[13] are being heard at the South Bend Courthouse.

The Court starts with the alleged barriers to accessibility.  With respect to the ramp between the County-City Building and the South Bend Courthouse, the County argues that the only evidence regarding the ramp is testimony from architect John Wertz that the ramp meets applicable ADA standards.  In response, plaintiffs offer the Court's summary (from the opinion denying preliminary injunction) of the testimony of Matthew Pawlak, in which Mr. Pawlak testified that the ramp was somewhere between 30 and 50 yards long.  [DE 168-1 at 4.]  They offer no other evidence, including any evidence that any of the plaintiffs have ever experienced any difficulty entering or leaving the South Bend Courthouse due to the ramp.

The plaintiffs should have done more than simply point to evidence provided at the preliminary injunction hearing.  While they cite to the Court's summary of that evidence, they ignore that the Court wrote, in footnote 7 of that opinion, "the plaintiffs (who have the burden), have not produced any evidence that this ramp is not usable by individuals with wheelchairs or not ADA compliant."  [DE 129 at 13 n.7.]  Plaintiffs still retain the burden and still have provided no evidence that the ramp in any way limits the accessibility or usability of court services by disabled persons, or otherwise discriminates against disabled persons.  Because none of the plaintiffs can establish that the ramp impaired their access to court services, the allegation

---

[12] Any prospective challenge to the parking lot at the Mishawaka Courthouse need not be addressed, since no plaintiffs have any pending cases at that Courthouse and, thus, no standing to challenge its accessibility.

[13] The Plaintiffs failed to provide any update regarding the status of Ms. Brandy-Comer's case, either in response to the City's or County's motion.  The Court takes judicial notice that Ms. Brandy-Comer's case was transferred from the small claims division to the plenary docket of the Superior Court on February 18, 2011.  The current cause number is 71D07-1102-PL-000045.  The case sat dormant for over three years, until a pretrial conference was held on May 5, 2014.  The case appears to be in discovery, which closes on October 1, 2014.

cannot support any claim for past damages; due to the lack of evidence that it provides any current limitation to disabled litigants, the allegation cannot support any claim for prospective relief.

That leaves as the only remaining alleged barrier the restrooms in the South Bend Courthouse. As of the date of the Court's earlier ruling on the plaintiffs' motion for preliminary injunction, there were no ADA accessible restrooms in the South Bend Courthouse; in order to reach an accessible restroom, a disabled litigant needed to travel to either the 1855 Courthouse or the basement of the County-City Building, in the manner described in the Court's opinion denying plaintiffs' motion for preliminary injunction. That has now changed. Both the County and the plaintiffs agree that the South Bend Courthouse now has accessible restrooms, the installation of which was completed in the summer of 2013.

The County argues that this change moots any claim for prospective relief based on the restrooms in the South Bend Courthouse. Additionally, they argue that where a governmental entity ceases allegedly wrongful conduct, there is a rebuttable presumption that the objectionable behavior will not occur. [DE 174 at 12–13.] This is especially true in the case of structural modifications. *See Kallen v. J.R. Eight, Inc.*, 775 F. Supp. 2d 1374, 1379 (S.D. Fla. 2011) ("It is untenable for Plaintiff to suggest that once the renovations are completed they could be undone.").

In response to the County's motion for summary judgment, the plaintiffs do not offer any argument that the current state of the restrooms in the South Bend Courthouse meaningfully deprives litigants of access to the South Bend Courthouse. Instead, they admit (in their cross-motion) that the new restrooms are "accessible" and argue that a declaratory judgment and permanent injunction should be entered against the County, requiring them to maintain

accessible restrooms in the South Bend Courthouse. [DE 166 at 1.] The request for declaratory judgment will be addressed below. For the purposes of the plaintiffs' claims against the County, it suffices that there is no current controversy regarding the accessibility of the restrooms. Accordingly, any prospective claims based upon that allegation are moot.

The analysis above disposes of all of the potential barriers that the plaintiffs claim render the Courthouses inaccessible to disabled persons. For some, plaintiffs lack standing to challenge the supposed inaccessibility. For the others, they have failed to provide any evidence that the potential barrier limits the accessibility or usability of court services, or otherwise discriminates against disabled persons.

Finally, the Court turns to the remaining claims for damages. Starting with Mr. Hummel's claim for past damages, the County argues that Mr. Hummel has not alleged or provided evidence of any discrimination or difficulty he encountered during his one-day bench trial. [DE 161 at 5.] The County has also provided the affidavit of Judge Reagan, who presided over Mr. Hummel's trial. [*Id.* at 15–16.] Judge Reagan has no recollection of anyone bringing to her attention during the course of the trial any difficulty due to a disability. She further states that, had anyone brought such a difficulty to her attention, she would have accommodated any request for assistance. She concludes by stating that the judgment entered against Mr. Hummel was in no way related to his disability. [*Id.*]

In response, plaintiffs state that Judge Reagan's affidavit does not show the "absence of evidence" which would justify summary judgment on behalf of the County. [DE 168 at 3–4.] Additionally, they contend that Mr. Hummel did not have a duty to file a formal or informal complaint before suing. [*Id.* at 5.] Finally, plaintiffs argue that the "Court has well summarized

the difficulties and problems individuals with disabilities faced in the main Courthouse.  Mr. Hummel is in that group."  [*Id.* at 7.]

This evidence is not sufficient for Mr. Hummel's claim to survive summary judgment. Again, to succeed on the merits of a claim under Title II, a plaintiff must establish "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability."  *Frame*, 575 F.3d at 435; *Culvahouse*, 679 F. Supp. 2d at 937.  In the face of the County's motion for summary judgment, Mr. Hummel must "come forward with evidence that would reasonably permit the finder of fact to find in [his] favor on a material question."  *Modrowski*, 712 F.3d at 1167.  If he does not "then the court *must* enter summary judgment against him."  *Id.* (citing *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (emphasis in original).

Here, the only things the Court knows about Mr. Hummel's experiences in the Courthouse are that he engaged in a one-day bench trial and that he is disabled.  He offers no evidence in support of a claim that he was denied the benefits of the court's service or in any way discriminated against during the course of the trial.  Notably, Mr. Hummel offers no affidavit or other evidence of how he was personally affected by any claimed barriers within the South Bend Courthouse or Judge Reagan's courtroom.  In essence, he asks the Court to extrapolate that because some disabled litigants might suffer difficulties or discrimination, and Mr. Hummel is disabled, he suffered difficulties or discrimination.  This is insufficient to show that Mr. Hummel personally suffered any discrimination or was denied the benefits of the court's services.  Accordingly, summary judgment is **GRANTED** on Mr. Hummel's claim for past damages against the County.

A similar analysis warrants summary judgment on the claims for damages by Ms. Wright, Ms. Brandy-Comer, and Mr. Ramos. While the Court at least knows that Mr. Hummel engaged in a one-day bench trial, no evidence has been offered by the plaintiffs to show when, if ever, plaintiffs entered the respective Courthouses at issue. If they did enter the Courthouses, no evidence is provided as to how they were denied the benefits of the court's services or in any way discriminated against during the course of the proceedings. For this reason, summary judgment is **GRANTED** on their claims for past damages against the County, as well.

For the reasons stated above, the County's Motion for Summary Judgment is **GRANTED**. [DE 160.] The claims of Ms. Wright and Ms. Brandy-Comer (both for prospective relief and damages) and the claims of Mr. Hummel and Mr. Ramos (damages only) are unsupported by evidence by which a reasonable jury could find in their favor; accordingly, summary judgment is **GRANTED** in favor of the County on those claims. All other pending claims against the County are **DISMISSED WITHOUT PREJUDICE** for lack of standing.

D.     **Plaintiffs' Cross-Motion for Partial Summary Judgment**

In addition to the motions filed by the City and the County, the plaintiffs filed a cross-motion for partial summary judgment. Their cross-motion asks the court to:

> issue a declaratory judgment and permanent injunction against defendants reflecting that:
>
> 1.  The county installed accessible restrooms in the main Courthouse approximately three and one-half years after plaintiffs filed this case.
>
> 2.  Since the filing of this lawsuit the county has adopted a policy that should there be any situation where a person with a disability encountered a problem when participating in a trial conducted in one of the older courtrooms, that upon request that trial could be moved to one of the two ADA-compliant courtrooms located within the St. Joseph Superior Court

system, one located in the basement of the main building, and
the other located in the adjacent 1855 Courthouse.

[DE 166 at 1.]  The County notes that the plaintiffs appear to be bringing the cross-motion in an

attempt to position themselves as a prevailing party, for the purpose of a later request for fees.

[DE 176 at 5.]  The plaintiffs make clear that they do, in fact, intend to request fees, regardless of

the ruling on this motion.  [DE 178 at 8–12.]  Obviously, at this point, any future request for fees

is not currently before this Court and the plaintiffs' cross-motion must be analyzed on its own

merit, notwithstanding any other future motive for its having been filed.[14]

The plaintiffs' requests for declaratory judgment can be summarily dismissed because the

plaintiffs have no remaining underlying claims, following the rulings above.  *See, e.g., Gibbs v.*

*Ocwen Loan Servicing, LLC*, No. 3:14-CV-1153, 2014 WL 4414809, at *9 (N.D. Tex. Sept. 5,

2014) ("declaratory judgment are forms of relief based on underlying claims.  Because the Court

concludes that none of Plaintiff's claims can withstand dismissal at this time, Plaintiff's request

for declaratory relief cannot survive and should be dismissed with prejudice." (citation omitted)).

Accordingly, the Court **DENIES** both requests to enter a declaratory judgment and permanent

injunction.

Alternatively, even if the plaintiffs had any remaining underlying claims, the Court would

determine that the requested declaratory judgments are inappropriate on the current record. With

respect to the restrooms, there is no dispute that the County did in fact install accessible

restrooms in the South Bend Courthouse.  A permanent injunction to force the County to keep

the restrooms there would only be cognizable if the Court determined it is likely that the County

will revert to a position without handicap accessible restrooms in the South Bend Courthouse.

---

[14] The Court notes that an unstated implication in both of the questions on which the plaintiffs seek declaratory judgment and permanent injunction is that the actions were taken in response to this lawsuit.  However, there is no evidence offered by plaintiffs to substantiate that implication.

There is, however, a "rebuttable presumption that the objectionable behavior will *not* recur" in a case where the "defendant is not a private citizen but a government actor." *Chi. United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 947 (7th Cir. 2006) (emphasis in original). This is demanded by the notion of comity. *Id.* ("Comity, moreover—the respect or *politesse* that one government owes another, and thus that the federal government owes state and local governments—requires us to give some credence to the solemn undertakings of local officials."); *see also Magnuson v. Hickory Hills*, 933 F.2d 562, 565 (7th Cir. 1991) ("When the defendants are public officials, however, we place greater stock in their acts of self-correction, so long as they appear genuine.").

Plaintiffs argue that the construction of the restrooms is not an act to which this Court owes deference. They argue that the County has never admitted having violated the ADA and that it has resisted attempts to place into the record of this case a letter regarding its plan to construct the restrooms. [DE 167 at 10–11.]

However, the Court does find that the County's construction of the accessible restrooms is an act to which governmental deference is owed. Obviously it would be illogical for the County to spend additional funds to revert what is now an accessible restroom to an inaccessible restroom. So the real question is whether the County will continue to allow disabled citizens access to that accessible restroom, instead of reverting it to its prior use as a restroom for courthouse security personnel. The County has indicated no such intention to revert the restroom from public access and without any evidence to the contrary it would be speculative at best to conclude otherwise. In light of the deference this Court owes to the County as a local government, the Court takes the County at its word.

Regarding the supposed policy regarding the transfer of cases to ADA accessible courtrooms, the plaintiffs have the burden of establishing that the policy in fact exists. However, they argue both sides of the question. They ask the Court to find that "the county has adopted a policy that should there be any situation where a person with a disability encountered a problem when participating in a trial conducted in one of the older courtrooms, that upon request that trial could be moved to one of the two ADA-compliant courtrooms located within the St. Joseph Superior Court system." [DE 157 at 11.] However, in the very next paragraph, the plaintiffs question the very existence of that policy. [Id. at 12 ("Plaintiffs therefore infer that the policy is an informal one followed by at least two, and possible more, Superior Court judges in their assigned cases.").] Moreover, there are disputes as to when this policy came into being.

While Plaintiffs request a finding that there is such a policy and that it came into being since the filing of this lawsuit, there are genuine disputes regarding these questions, precluding partial summary judgment on this point. There is no evidence as to when the policy was adopted. Moreover, to the extent plaintiffs imply otherwise, there is absolutely no evidence to suggest that the policy was adopted in response to this lawsuit. Finally, as noted above, consideration of this alleged policy was not relevant in deciding the County's motion for summary judgment.

### IV. Conclusion

For the reasons stated above, the County's Motion to Strike Plaintiffs' Cross-Motion for Partial Summary Judgment is **DENIED** [DE 172], the City's Motion for Summary Judgment as to Plaintiffs' Supplemental Complaint is **GRANTED** [DE 158], the County's Motion for Summary Judgment is **GRANTED** [DE 160], and the plaintiffs' Cross-Motion for Partial Summary Judgment is **DENIED** [DE 166].

The Clerk is **DIRECTED** to enter judgment in favor of the County against plaintiffs Crystal Wright (both claims for damages and prospective relief), Karen Brandy-Comer (both claims for damages and prospective relief), Stephen Hummel (claim for damages only), and Michael Ramos (claim for damages only).  All remaining claims are **DISMISSED WITHOUT PREJUDICE** for lack of standing.

SO ORDERED.

ENTERED:  September 29, 2014

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court